200 N.J. Super. 343 (1985)
491 A.2d 742
NEW JERSEY STATE PAROLE BOARD, PLAINTIFF-RESPONDENT,
v.
WINFRED GRAY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 22, 1985.
Decided February 19, 1985.
*345 Before Judges MICHELS, PETRELLA and BAIME.
Joseph Rodriguz, Public Defender, attorney for appellant (Paul Gauer, Designated Counsel, on the letter brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent (James J. Ciancia, Assistant Attorney General, of counsel; Catherine M. Brown, Deputy Attorney General, on the brief).
The opinion of the court was delivered by PETRELLA, J.A.D.
Appellant Winfred Gray had been serving sentences at the Youth Correctional Institution Complex for a 1973 conviction of robbery while armed and for a 1974 conviction of possession of a stolen motor vehicle. His maximum sentence would have expired March 29, 1980.
Gray had been paroled on November 26, 1974, and while still on parole committed another robbery. He was convicted on July 3, 1978 of entering a motor vehicle while armed with the intent to commit a robbery and robbery while armed. He was sentenced to an aggregate of 9 to 13 years at State Prison.
The Youth Correctional Institution Complex Board of Trustees by notice dated November 8, 1978 advised Gray that his parole was being revoked. He was required to serve the balance of his original sentence as required by the Parole Act of 1948. As a result of amendments to the Parole statutes, Gray's parole violation penalty was subsequently reduced to 16 months. Gray was notified by the Board on January 22, 1981 that for setting his parole eligibility date his 16 month term would be aggregated with and made consecutive with the 9 to 13 year sentence he received for his 1978 convictions. See N.J.S.A. 30:4-123.64d. At a September 16, 1981 parole hearing the Board set October 6, 1981 as the date for Gray's parole release. However, when he returned to the Rahway State Prison camp from a work-release furlough on September 26, 1981, Gray's urine sample revealed the presence of morphine. *346 On October 2, 1981 Gray received an institutional infraction for the use of nonprescription drugs. An institutional "courtline" hearing was held on October 5, 1981. The drug use charge was sustained and Gray's penalty was "ten days lock up, 30 days loss of commutation time (suspended 60 days) and 60 days urine monitoring." As a result the Board placed an administrative hold against Gray's October 6, 1981 release date. Gray appealed his infraction to the prison superintendent who modified the penalty to "ten days lock up suspended, loss of 30 days commutation time suspended and 60 days urine monitoring."
A final parole rescission hearing was conducted on November 10, 1981. The hearing officer stated that the purpose of the hearing was not to determine guilt or innocence of the drug use charge because that was considered res judicata. Rather, he was inquiring into whether there were any aggravating or mitigating circumstances which would warrant suspending or rescinding Gray's parole date or setting another parole date. At this hearing Gray's attorney did try to challenge the evidence used to establish the drug-use charge. She contended that the urine sample test was insufficient to establish drug use; that such unreliable data should not jeopardize his release date, and that the maintenance procedure used to protect urine samples from tampering was inadequate.
After the hearing the Board discovered that Gray's original parole eligibility date had been miscalculated because the 16 month penalty for parole violation had not been included in his aggregate sentence. The Board notified Gray that it was rescinding his October 6, 1981 parole date because he had not been eligible for parole consideration at that time. The Board also postponed Gray's parole eligibility term by six months because of the institutional infraction for drug use. Thus, his parole eligibility date was extended 16 months for the parole violation and six months for the institutional infraction. Gray's administrative appeal to the Board was denied. He then appealed out of time to this court, and we granted leave to file nunc pro tunc.
*347 Gray was subsequently released on parole on February 15, 1983. The Public Defender then moved to be relieved as counsel, contending that appellant's release on parole had rendered the parole rescission appeal moot. Although that application was denied, the mootness issue was preserved.
On this appeal the following issues are projected: (1) whether appellant's appeal is moot because he has been released on parole; (2) whether the Board erroneously rescinded appellant's parole by miscalculating his eligibility term, and (3) whether the Board's rescission hearing denied appellant due process.
With respect to the mootness issue, we observe initially that what is involved here is a rescission of a parole eligibility date and a rescheduling thereof rather than revocation of parole. The State in urging mootness, relies on New Jersey State Parole Board v. Boulden, 156 N.J. Super. 494 (App.Div. 1978). There we declared defendant's appeal of revocation of parole moot when he had served the maximum sentence. In such a situation the potential for collateral consequences attributable to parole revocation were considered speculative and remote. Here, Gray's release from custody made any remaining issues insubstantial and even more insignificant than those noted in Boulden. Even if the Board had erred with respect to the extension of Gray's eligibility date, he would not automatically have been entitled to release on the date he became eligible for parole. Regardless of the date he became eligible for parole or was released, the length of his term on parole would remain the same. However, a somewhat different result was reached in Board of Trustees of Youth Correctional Center v. Davis, 147 N.J. Super. 540 (App.Div. 1977). See also New Jersey State Parole Board v. Woupes, 184 N.J. Super. 533, 536 (App.Div. 1981) and State v. Dalonges, 128 N.J. Super. 140, 143 (App.Div. 1974). In Davis we compared a convict's right to appeal parole revocation to his right to appeal the underlying conviction. We are inclined to the view that Boulden is more persuasive when a question of rescission and rescheduling of a *348 parole eligibility date is involved, and we conclude that the issue becomes moot upon an inmate's parole. Hence, the appeal is dismissed as moot.
Nevertheless, we also consider in the alternative the merits of appellant's contentions. Under N.J.S.A. 30:4-123.51h the Board had the power to recalculate defendant's parole eligibility date and to require that the additional sentence on the parole violation be served consecutively to that being served on his convictions. At the time of defendant's sentence it was then the law that absent specific determination by the sentencing judge, the terms of each sentence would be consecutive. State v. Fudali, 113 N.J. Super. 426 (App.Div. 1971); see State v. Grant, 102 N.J. Super. 164, 170-171 (App.Div. 1968). To the extent that dictum in State v. DeMott, 128 N.J. Super. 395, 398 (Law Div. 1974) is to the contrary, we overrule that decision.
The former parole law provision was contained in N.J.S.A. 30:4-123.27 (repealed by L. 1979, c. 441, § 27). When the Penal Code was enacted it included an express provision that parole violation penalties were to be deemed concurrent with criminal penalties, unless the court sentencing the defendant for crimes committed while on parole orders the sentences to run consecutively. N.J.S.A. 2C:44-5c. That provision was amended by L. 1983, c. 462, § 1, effective January 12, 1984, to reverse the presumption and provide that unless expressly otherwise provided, parole violation terms are to run consecutively to the criminal sentences.
Gray argues that N.J.S.A. 30:4-123.52a does not authorize the Board to recalculate his parole eligibility even if it discovers its mistake because that statute allows the Board to increase an inmate's parole eligibility date only for violating institutional rules or engaging in indictable conduct while in custody. His argument is that this does not authorize an increase in parole eligibility not based on bad conduct.
The error in appellant's contention is that the Board was not seeking to penalize him by delaying his original parole *349 eligibility date, but rather was correcting a miscalculation. Because Gray's sentence was presumptively consecutive under the then effective statute, the original parole eligibility date given by the Board was incorrect. Hence, the Board could correct that error at any time, and there was no due process error in so recalculating without prior notice to Gray or affording him a hearing. The miscalculation here did not result in actual rescission of parole eligibility, but merely in a correction of the date and an adjustment to conform to the true terms of his eligibility. Gray could not have obtained an early release because of the Board's error.
We next turn to appellant's argument that he was denied due process because the Board considered his drug use infraction to have been established in the "courtline" hearing. There was no record made and it is unclear exactly what evidence was produced at that hearing. In N.J. State Parole Board v. Woupes, supra, 184 N.J. Super. at 533, it was argued that the inmate had been denied due process by the Board's acceptance of the court line decision as res judicata and using it as the basis for rescission. There we considered the constitutionality of N.J.A.C. 10A:71-2.4(a) which required the Board to consider as res judicata final decisions of departmental officials who adjudicate institutional infractions. Subsection c thereof provides that a Board panel reviewing an institutional infraction for the purpose of rescinding parole "shall consider aggravating and mitigating circumstances relating to the infraction but shall not consider evidence relating to the inmate's guilt or innocence of the commission of the institutional infractions." We agree with the view in Woupes that a Parole Board is not intended as an appeal tribunal to relitigate prison disciplinary hearings. The proper remedy is an appeal to the appropriate tribunal, and in the absence of such an appeal the Board can consider that determination as final.
Affirmed.