665 A.2d 1133

WILLIAM LOFTWICH, PLAINTIFF–APPELLANT, v. WILLIAM H. FAUVER, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 3, 1995—Decided October 19, 1995.

Before Judges MICHELS, BAIME and KIMMELMAN.

Appellant submitted a *pro se* brief.

*Deborah T. Poritz*, Attorney General, attorney for respondent (*Lynn Wassel*, Deputy Attorney General, on the letter-brief).

The opinion of the court was delivered by

BAIME, J.A.D.

When the Code of Criminal Justice (*N.J.S.A.* 2C:1–1 to 104–9) was originally enacted, *N.J.S.A.* 2C:44–5c provided that when a defendant is sentenced to imprisonment for an offense committed while on parole, the custodial term and any period of reimprisonment the parole board may require are to run "concurrently unless the court orders them to run consecutively." In 1984, this section was amended. *L.*1983, *c.* 462, § 1. *N.J.S.A.* 2C:44–5c now provides that when a defendant is sentenced to imprisonment for an offense committed while on parole, the custodial term and any period of reimprisonment the parole board may require as a result of parole revocation are to run "consecutively unless the court orders these sentences to run concurrently." *Ibid.* At issue is whether the *ex post facto* prohibition is violated by application of the statutory amendment to an offender who was initially sentenced prior to 1984, but who committed crimes in violation of his

parole after that date. We conclude that application of the 1984 amendment under these circumstances does not violate either the federal or State constitution.

We need not recount the facts at length. In 1982, appellant was convicted of three crimes and was sentenced to an aggregate term of eleven years. Although the chronology of events is not entirely clear, it appears that appellant has been paroled twice since 1985. Each time, appellant violated parole by committing new offenses. Because additional sentences were imposed and periods of reimprisonment set, the expiration date for the aggregate custodial term was postponed on each occasion. Calculation problems were compounded by the computation of commutation time, jail and work credits, and disciplinary penalties. Suffice it to say that appellant repeatedly questioned the "maximum" aggregate sentence expiration date set by the Department of Corrections.

This appeal is from the Commissioner's decision setting a maximum expiration date of March 17, 1997. Appellant argues that the Commissioner erred in his calculations, a point we find clearly lacking in merit. *R.* 2:11–3(e)(2). More troublesome is appellant's claim that the Commissioner unconstitutionally aggregated or cumulated the sentences imposed on the new crimes and the periods of reimprisonment set upon each revocation of parole. Appellant argues that the *ex post facto* clause bars application of the 1984 statutory amendment to offenders who committed their initial crimes before its effective date.

■ Appellant erroneously casts his argument in terms of *N.J.S.A.* 2C:44–5b(3). Prior to 1984, that section provided "[w]hen a new sentence is imposed on a prisoner who is on parole, the balance of the parole term on the former sentence shall be deemed to run during the period of the new imprisonment." In 1984, this section was amended to read that the balance of the parole term on the previous sentence "shall not be deemed to run during the period of the new imprisonment" unless otherwise ordered by the court. *L.*1983, *c.* 462, § 1. Appellant claims that the amended section should not apply because it would materially increase the

sentences originally imposed in 1982 and would thus run afoul of the *ex post facto* prohibition. We do not address this question because it is clear that *N.J.S.A.* 2C:44–5b(3) is inapplicable. That section only applies "[w]hen a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence." *N.J.S.A.* 2C:44–5b. *See State v. Richardson,* 208 *N.J.Super.* 399, 506 *A.2d* 43 (App.Div.), *certif. denied,* 105 *N.J.* 552, 523 *A.2d* 188 (1986); *State v. Hall,* 206 *N.J.Super.* 547, 503 *A.2d* 344 (App.Div. 1985); Cannel, *New Jersey Criminal Code Annotated,* comment 4 on *N.J.S.A.* 2C:44–5 (1995).

Clearly, *N.J.S.A.* 2C:44–5c is the applicable statute. To repeat, when the Code of Criminal Justice was adopted, periods of imprisonment and reimprisonment were to run concurrently unless otherwise ordered by the court where the offender committed crimes while on parole. *New Jersey State Parole Bd. v. Gray,* 200 *N.J.Super.* 343, 348, 491 *A.2d* 742 (App.Div.1985). The effect of the 1984 amendment was "to reverse the presumption" and provide that unless otherwise ordered "parole violation terms are to run consecutively to the criminal sentences." *Ibid.*

We are satisfied that the *ex post facto* prohibition does not bar application of the statutory amendment to an offender who was originally sentenced prior to 1984, but who violated parole by committing a crime after that date. Both the federal and State constitutions bar enactment of *ex post facto* legislation. *U.S. Const.* art. I, § 10, cl. 1; *N.J. Const.* art. IV, § 7, ¶ 3. The prohibition has long been regarded as one of the fundamental protections against arbitrary and oppressive government. *See The Federalist,* No. 44, at 282 (James Madison), and No. 84, at 588 (Alexander Hamilton) (Clinton Rossiter ed., 1961). Stated broadly, the clause " 'prohibits any law which in relation to the past offense or its punitive consequences, alters the situation of the offender to his disadvantage.' " *State v. Humanik,* 199 *N.J.Super.* 283, 301, 489 *A.2d* 691 (App.Div.) (quoting *State v. T.P.M.,* 189 *N.J.Super.* 360, 366–67, 460 *A.2d* 167 (App.Div.1983)), *certif. de-*

*nied,* 101 *N.J.* 266, 501 *A.*2d 934 (1985). The *ex post facto* provision applies to a wide range of changes affecting trial procedures and the mechanics of punishment. We are concerned here with that aspect of the prohibition that bars enactment of any statute "inflict[ing] a greater punishment than the law annexed to the crime when committed." *Calder v. Bull,* 3 *U.S.* (3 *Dall.*) 386, 389, 1 *L.Ed.* 648, 650 (1798).

Legislatures may not retroactively "increase the punishment for criminal acts." *Collins v. Youngblood,* 497 *U.S.* 37, 43, 110 *S.Ct.* 2715, 2719, 111 *L.Ed.*2d 30, 39 (1990); *Miller v. Florida,* 482 *U.S.* 423, 107 *S.Ct.* 2446, 96 *L.Ed.*2d 351 (1987); *Weaver v. Graham,* 450 *U.S.* 24, 101 *S.Ct.* 960, 67 *L.Ed.*2d 17 (1981); *Lindsey v. Washington,* 301 *U.S.* 397, 57 *S.Ct.* 797, 81 *L.Ed.* 1182 (1937). Similarly, laws changing qualifications for parole consideration that are likely to result in additional time in prison violate the "additional punishment" prohibition of the *ex post facto* clause. *Doe v. Poritz,* 142 *N.J.* 1, 45, 662 *A.*2d 367 (1995). It has also been said that "the *ex post facto* clause is violated when a parole violator is punished in a way that adversely affects his ultimate release date under a statute that was adopted after the violator committed the underlying offense but before he violated the terms of his parole." *United States v. Paskow,* 11 *F.*3d 873, 878 (9th Cir.1993). For example, the Ninth Circuit recently held in the case of a parole revocation "it is unconstitutional to apply a statute that alters, to the defendant's disadvantage, the terms under which eligibility for re-parole is calculated, if that statute was enacted after the date of the underlying offense—even though the act upon which revocation is based occurred after the enactment of the statute." *Id.* at 878. *See Greenfield v. Scafati,* 277 *F.Supp.* 644 (D.Mass.1967), *aff'd mem.,* 390 *U.S.* 713, 88 *S.Ct.* 1409, 20 *L.Ed.*2d 250 (1968). Other circuits have also held that the *ex post facto* clause is violated when a defendant's eligibility for release is adversely affected under a statute that was not in effect at the time of the defendant's underlying crime but was adopted before the act which resulted in parole revocation was committed. *See*

*Fender v. Thompson,* 883 *F.*2d 303, 305 (4th Cir.1989); *Schwartz v. Muncy,* 834 *F.*2d 396, 398 n. 8 (4th Cir.1987); *Beebe v. Phelps,* 650 *F.*2d 774, 777 (5th Cir.1981); *Shepard v. Taylor,* 556 *F.*2d 648, 654 (2d Cir.1977).

The decisions we have cited hinged upon the fact that the newly adopted statutes " 'disadvantage[d] the offender affected by [them].' " *United States v. Paskow,* 11 *F.*3d at 877 (quoting *Miller v. Florida,* 482 *U.S.* at 429, 107 *S.Ct.* at 2451, 96 *L.Ed.*2d at 359). The effect of the statutes was to extend the offenders' sentences and materially increase their punishment. *Id.* at 879. Nevertheless, not every change in parole regulation is of sufficient moment to transgress the constitutional prohibition. The *ex post facto* clause was surely not intended to require judicial micromanagement of an endless array of legislative adjustments to parole and sentencing procedures.

The critical inquiry is whether the statute realistically produces a sufficient risk of increasing the measure of punishment as to offend the constitutional prohibition. The United States Supreme Court has declined to articulate a single formula but instead has said the question is "one of degree." *Beazell v. Ohio,* 269 *U.S.* 167, 171, 46 *S.Ct.* 68, 69, 70 *L.Ed.* 216, 218 (1925).

*Cal. Dep't of Corrections v. Morales,* 514 *U.S.* ——, 115 *S.Ct.* 1597, 131 *L.Ed.*2d 588 (1995) is the Court's most recent pronouncement on the subject. There, the Court considered whether a statutory amendment decreasing the frequency of parole summary hearings could be applied to prisoners who committed their crimes before the legislation was enacted. *Id.* at ——, 115 *S.Ct.* at 1600, 131 *L.Ed.*2d at 593. The Court found that the amendment "create[d] only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes," and that "such conjectural effects [were] insufficient under any threshold [it] might establish" under the *ex post facto* clause. *Id.* at ——, 115 *S.Ct.* at 1603, 131 *L.Ed.*2d at 597.

We need not determine whether the same result would be reached under the New Jersey Constitution. *See Doe v. Poritz,* 142 *N.J.* at 42–43 n. 10, 662 *A.*2d 367. We are convinced, however, that application of the 1984 amendment to an offender who was sentenced before the effective date of that enactment, but who violated parole after that date, does not create a significant risk of enhanced confinement. In our view, the amendment merely made a mechanical change in parole administration and did not produce even a remote risk of increasing the defendant's incarceration. We stress that the legislative change only reversed the effect of silence by the court. Cannel, *New Jersey Criminal Code Annotated,* comment 5 on *N.J.S.A.* 2C:44–5 (1995). Before the amendment, subsection c made a sentence concurrent where the court did not otherwise specify. As amended, the subsection now makes the sentence consecutive where the court does not otherwise specify. *Ibid.* Both before and after the amendment, it was, and is, the responsibility of the court to determine whether sentences should run concurrently or consecutively. *Cf. State v. Hall,* 206 *N.J.Super.* 547, 550, 503 *A.*2d 344 (App.Div.1985); *see also New Jersey State Parole Bd. v. Gray,* 200 *N.J.Super.* at 348, 491 *A.*2d 742; *State v. Grant,* 102 *N.J.Super.* 164, 170–71, 245 *A.*2d 528 (App.Div.), *certif. denied,* 53 *N.J.* 62, 247 *A.*2d 885 (1968); Cannell, *New Jersey Criminal Code Annotated,* comment 5 on *N.J.S.A.* 2C:44–5 (1995).

Given these circumstances, we conclude that appellant was not disadvantaged by the application of the statutory amendment. Accordingly, the determination of the Department of Corrections is affirmed.