**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1635-13T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

F.W.,

     Defendant-Appellant.

_____

┌─────────────────────────────┐
│    **APPROVED FOR PUBLICATION**  │
│                             │
│      **January 14, 2016**       │
│                             │
│      **APPELLATE DIVISION**     │
└─────────────────────────────┘

Submitted September 22, 2015 – Decided January 14, 2016

Before Judges Reisner, Leone and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 12-09-02209.

Joseph E. Krakora, Public Defender, attorney for appellant (Susan Remis Silver, Assistant Deputy Public Defender, of counsel and on the brief).

John J. Hoffman, Acting Attorney General, attorney for respondent (Jeffrey P. Mongiello, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

REISNER, P.J.A.D.

Defendant appeals from his conviction, after a bench trial, for the fourth-degree offense of violating the conditions of his special sentence of community supervision for life (CSL) by

failing to report to his parole officer, N.J.S.A. 2C:43-6.4(d), and for the third-degree offenses of violating two provisions of the Sex Offender Monitoring Act (SOMA), N.J.S.A. 30:4-123.94 (failure to comply with any SOMA monitoring requirement) and N.J.S.A. 30:4-123.95 (interfering with his SOMA-required electronic monitoring device). Defendant also challenges the sentence imposed, consisting of five years in prison for the SOMA convictions, concurrent to eighteen months in prison for the CSL conviction.[1] He raises the following issues on his appeal:

> I. [F.W.'S] DUE PROCESS RIGHTS WERE VIOLATED WHEN THE STATE PLACED HIM ON CONTINUOUS GPS MONITORING WITHOUT PROVIDING ANY BASIS FOR THE SURVEILLANCE AND WITHOUT PROVIDING ANY HEARING WHERE HE COULD CHALLENGE THE GPS MONITORING THROUGH CROSS-EXAMINATION AND PRESENTATION OF WITNESSES WITH THE ASSISTANCE OF COUNSEL.
>
> II. THE RETROACTIVE APPLICATION OF THE SEX OFFENDER MONITORING ACT TO THE DEFENDANT MORE THAN TWO YEARS AFTER HIS RELEASE FROM PRISON ON COMMUNITY SUPERVISION FOR LIFE VIOLATES HIS RIGHTS UNDER THE EX POST FACTO CLAUSES OF THE UNITED STATES CONSTITUTION AND NEW JERSEY CONSTITUTION.
>
> III. THE TRIAL COURT ERRED WHEN IT CONSIDERED AS AGGRAVATING FACTORS THE

---

[1] When defendant was convicted, N.J.S.A. 2C:43-6.4(d) provided that a CSL violation was a fourth-degree crime. In 2014, the Legislature amended N.J.S.A. 2C:43-6.4(d) to provide that a CSL violation is punishable as a third-degree crime. See L. 2013, c. 214 (approved Jan. 17, 2014).

DEFENDANT'S ALLEGED LACK OF REMORSE AND FAILURE TO ACCEPT RESPONSIBILITY, AND WHEN THE COURT FAILED TO PROPERLY WEIGH AGGRAVATING AND MITIGATING FACTORS AND IMPOSED AN EXCESSIVE SENTENCE.

We affirm defendant's conviction for violating the terms of his CSL, N.J.S.A. 2C:43-6.4(d). His appeal from the eighteen-month prison term imposed for that conviction is now moot because he has served that entire term.[2] On the other hand, consistent with the Supreme Court's recent opinions in Riley v. New Jersey State Parole Board, 219 N.J. 270 (2014), and State v. Perez, 220 N.J. 423 (2015), we hold that prosecuting and punishing defendant for third-degree crimes, created by SOMA after he committed his predicate offense, violated the Ex Post Facto Clause. U.S. Const. art. I, § 10, cl. 1; N.J. Const. art. IV; § 7, ¶ 3; see State v. Fortin, 178 N.J. 540, 608 n.8 (2004). Defendant's SOMA-related convictions, and the five-year prison term imposed for those convictions, must therefore be reversed.

In reaching our decision, we do not hold that defendant and other sex offenders whose predicate offenses predated SOMA cannot be placed on Global Positioning Satellite (GPS) monitoring. The CSL statute, when enacted in 1994, authorized

---

[2] Defendant was sentenced on August 16, 2013, and received 365 days of jail credit. His brief indicates that he is no longer confined, and clearly his CSL sentence has been served. We need not address his SOMA-based sentencing argument because we are reversing his SOMA conviction.

the Parole Board to subject CSL offenders to "conditions appropriate to protect the public." See L. 1994, c. 130, § 2 (then codified as N.J.S.A. 2C:43-6.4(b)). We perceive no reason why that could not include GPS monitoring of a CSL offender in appropriate circumstances, regardless of the date on which he committed the predicate offenses. For example, we note that the Board has adopted regulations governing electronic monitoring of offenders subject to CSL and parole supervision for life (PSL), which would permit monitoring as a result of a violation of CSL or PSL. See N.J.A.C. 10A:72-10.1(a)(3); see also N.J.A.C. 10A:72-2.4(b)(3)(ii). The regulations provide an offender the due process right to be heard before monitoring is imposed, with a review after 90 days, and set a maximum time limit of 180 days for the monitoring, after which it will be terminated if no longer warranted. See N.J.A.C. 10A:72-10.1 to -10.9; see also N.J.A.C. 10A:72-11.1 to -11.6.[3] Nothing in this opinion would preclude application of those regulations to defendant.

---

[3] The CSL regulations were first adopted in 2011, in response to the Court's decision in Jamgochian v. New Jersey State Parole Board, 196 N.J. 222, 250 (2008), holding that a CSL offender was entitled to due process before imposition of a curfew as a special condition of CSL. See 43 N.J.R. 1408(a). The Board adopted similar regulations governing GPS monitoring under SOMA in 2012, apparently in response to the Appellate Division's decision in Riley v. New Jersey State Parole Board, 423 N.J. Super. 224 (App. Div. 2011), aff'd, 219 N.J. 270 (2014). See 44 N.J.R. 2098(a) (Aug. 20, 2012).

In 1999, a jury convicted defendant of fourth-degree lewdness and third-degree endangering the welfare of a child (the predicate offenses), crimes he committed in 1997. On April 4, 2000, he was sentenced to five years of probation, conditioned on 562 days in the county jail which he had already served. As part of his sentence, he was also required "to comply with . . . Megan's Law including community supervision for life." Defendant violated the terms of his probation and was re-sentenced to prison. He was released on parole in 2006 and, after he served the maximum time on parole, he was placed on CSL supervision.

According to a report later issued by the Parole Board, a few months after defendant was placed on CSL, he was arrested for a CSL violation for having contact with minors and failing to attend required counseling. He was arrested for similar CSL violations in April 2007. He was arrested a third time in December 2007 for failing to notify his parole officer of a change in his residence. According to the pre-sentence report issued in connection with the current convictions, defendant was criminally prosecuted three times for violating N.J.S.A. 2C:43-6.4(d). At his trial leading to the current appeal, defendant admitted the previous violations, although he claimed he did not

commit them "intentionally." He confirmed that the three prior prosecutions were resolved by "plea offer."[4]

After defendant's December 2007 CSL violation, his Parole Officer recommended that he "be enrolled in the Sex Offender GPS Monitoring Program." The Chairman of the State Parole Board (Parole Board Chairman) adopted that recommendation on June 6, 2008. See N.J.S.A. 30:4-123.91(a). On June 23, 2008, defendant signed a notice advising him that he was being assigned to the GPS monitoring program "[p]ursuant to [SOMA], which was enacted on August 6, 2007." The notice did not specify any time limit on defendant's obligation to wear a GPS tracking device twenty-four hours a day. Defendant was not given notice of a right to any due process, nor was he given an opportunity to be heard, before this new and onerous lifetime condition was imposed. Nor was he advised of a right to appeal the decision to this court.[5] The notice warned defendant that a violation of SOMA was a third-degree crime punishable by up to five years in prison.

---

[4] Neither party's appendix provides us with those judgments of conviction.

[5] Because the GPS condition was imposed pursuant to SOMA rather than as a special condition of defendant's CSL, the Board also did not follow the then-existing CSL regulations, which required review and approval by a Board Panel prior to the imposition of any special condition of CSL supervision. See N.J.A.C. 10A:71-6.11(k).

Defendant wore the GPS tracker until 2012, when he removed the device and ceased reporting to his assigned parole officer. On that basis, he was prosecuted and convicted for a CSL violation (failing to report to the parole officer), and two SOMA violations (failure to comply with a SOMA monitoring requirement and interfering with the GPS device while subject to SOMA).

## II

Megan's Law was enacted in 1994, as a complex of legislation designed to protect the public from sex offenders. See Perez, supra, 220 N.J. at 436-37. Since the 1994 enactment, the Legislature has imposed additional requirements and restrictions on convicted sex offenders. A brief review of the history provides some helpful background.

We begin by considering the CSL statute, N.J.S.A. 2C:43-6.4, as it existed when defendant committed his predicate offenses. The statute creating community supervision for life was enacted in 1994, L. 1994, c. 130, § 2, as part of Megan's Law, and was not amended until 2003. Perez, supra, 220 N.J. at 436-37. In Jamgochian, supra, the Court summarized the 1994 version of the statute as follows:

> Community supervision for life was "designed to protect the public from recidivism by defendants convicted of serious sexual offenses."

In 1998, N.J.S.A. 2C:43-6.4(b) provided that "[p]ersons serving a special sentence of community supervision shall be supervised as if on parole and subject to conditions appropriate to protect the public and foster rehabilitation." (emphasis added). Those offenders serving a "special sentence" are under the supervision of the State Parole Board's Division of Parole. N.J.A.C. 10A:71-6.11(b). One of the twenty-one general conditions applicable to community-supervised-for-life offenders is "[c]ompl[iance] with any curfew established by the assigned parole officer." N.J.A.C. 10A:71-6.11(b)(17). In addition to the general conditions, supervised offenders are required to abide by "any special conditions established by the appropriate [Parole] Board panel." Ibid. A violation of a "condition of a special sentence" is a fourth-degree crime carrying a presumption of imprisonment. N.J.S.A. 2C:43-6.4(d).

[Jamgochian, supra, 196 N.J. at 237-38 (additional citations omitted).]

In addition to the curfew, offenders subject to CSL "face a variety of conditions beyond those imposed on non-sex-offender parolees." Perez, supra, 220 N.J. at 437. For example, as set forth in the Parole Board's regulations, N.J.A.C. 10A:71-6.11, those subject to CSL must obtain the Board's approval of their residence and any change of residence; must obtain approval of employment and notify the Board of any change in employment status; may be subjected to annual polygraph examinations; and are restricted in their access to and use of the internet. N.J.A.C. 10A:71-6.11(b).

In 2003, the Legislature adopted the parole supervision for life statute, which specifically defined a convicted sex offender's post-sentence supervision as "parole" instead of "as if on parole." See N.J.S.A. 2C:43-6.4(b), as amended by L. 2003, c. 267, § 1. Most recently, the Court has held that PSL and CSL "are distinct special post-sentence supervisory schemes for certain sex offenders," and they cannot be treated as interchangeable, notwithstanding the Legislature's characterization of the PSL statute as a "clarification" of the CSL statute. Perez, supra, 220 N.J. at 428, 442. In Perez, the Court explained the difference between CSL and PSL:

> Persons serving CSL are "supervised as if on parole." N.J.S.A. 2C:43-6.4(b). Any violation of one or more conditions of CSL is a fourth-degree offense. N.J.S.A. 2C:43-6.4(d). In other words, a violation of CSL is punishable only as a crime; the Parole Board cannot return a defendant to prison through the parole-revocation process. Sanchez v. N.J. State Parole Bd., 368 N.J. Super. 181, 184, 845 A.2d 687 (App. Div. 2004), appeal dismissed per stipulation, 187 N.J. 487, 901 A.2d 951 (2006). . . . By contrast, following the 2003 amendment, a defendant who commits a predicate offense and is sentenced to PSL is "in the legal custody of the Commissioner of Corrections [and] shall be supervised by the Division of Parole of the State Parole Board" for life. N.J.S.A. 2C:43-6.4. A violation of PSL may be prosecuted as a fourth-degree offense, N.J.S.A. 2C:43-6.4(d), but it may also be treated as a parole violation, N.J.S.A. 2C:43-6.4(b). . . . [T]he almost-universal

A-1635-13T3

practice . . . is to revoke a [PSL] defendant's parole and return him to prison.

In addition, a defendant serving a special sentence of CSL who commits an enumerated offense is subject to a mandatory extended term under <u>N.J.S.A.</u> 2C:43-6.4(e)(1). The prosecutor, however, is required to notify the court and the defendant of her intention to seek such a sentence, and the defendant has the opportunity to controvert the grounds cited by the prosecutor, <u>N.J.S.A.</u> 2C:43-6.4(e)(2). A defendant subject to CSL who is sentenced to an extended term pursuant to <u>N.J.S.A.</u> 2C:43-6.4(e)(1) is eligible for parole. . . . By contrast, . . . a person serving a special sentence of PSL who commits an enumerated offense is not eligible for parole and will spend more years in prison than a person serving a special sentence for CSL who commits the same offense.

[<u>Id.</u> at 441-42 (footnote omitted).]

Because PSL imposes greater punishment on an offender than CSL does, an offender sentenced to CSL cannot later be subjected to the harsher special sentencing provisions of the PSL statute. <u>Perez</u>, <u>supra</u>, 220 <u>N.J.</u> at 442.

This is not a difference in form. The elimination of any prospect for parole enhances the penal consequences for a person placed on CSL status before January 14, 2004. Applying the current version of <u>N.J.S.A.</u> 2C:43-6.4(e) to defendant requires him to spend many additional years in prison due to this so-called clarification. As applied to defendant, the 2003 amendment to <u>N.J.S.A.</u> 2C:43-6.4(e) enhances the punitive consequences of the special sentence of CSL to his detriment and violates the federal

> and state prohibition of ex post facto legislation.
>
> [Ibid.]

Likewise, because CSL is a form of punishment, it cannot be imposed as a new requirement on an offender who has successfully served his entire original sentence. See State v. Schubert, 212 N.J. 295, 312-13 (2012).

In 2007, the Legislature enacted the Sex Offender Monitoring Act, N.J.S.A. 30:4-123.89 to -123.95, which in some cases requires and in other cases authorizes the Parole Board Chairman to impose GPS monitoring on certain convicted sex offenders. Notably, SOMA either requires or permits the imposition of GPS monitoring based on the type of sexual offense an individual committed in the past, his Megan's Law tier designation based on that offense, and his status as a CSL or PSL parolee. N.J.S.A. 30:4-123.91(a) (defining "monitored subject").

On its face, the statute appears to require GPS monitoring of all tier three sex offenders. See N.J.S.A. 30:4-123.91(a)(1). In addition, the statute gives the Parole Board Chairman discretion to require GPS monitoring of any person "who the chairman deems appropriate for continuous [GPS] monitoring" and who: has been discharged from commitment as a sexually violent predator, has been sentenced to CSL or PSL, or has been

11

convicted of a listed sexual offense against a victim under age eighteen or over age sixty. N.J.S.A. 30:4-123.91(a)(2). In exercising discretion, the Parole Board Chairman is to consider static or unchangeable factors, including "the risk to the public posed by the subject, based on relevant risk factors such as the seriousness of the offense, the age of the victim or victims, [and] the degree of force and contact." N.J.S.A. 30:4-123.91(b).[6] That list does not include a finding that the individual has committed a new offense or has violated the conditions of his CSL or PSL.

In addition to the static risk factors, which reflect the offense for which the individual was convicted, the chairman may consider "any other factors [he or she] deems appropriate." N.J.S.A. 30:4-123.91(b); N.J.A.C. 10A:72-11.1(b). Neither the statute nor the implementing regulations define those "other factors." Moreover, at least at the time GPS monitoring was imposed on defendant, once the Parole Board Chairman decided to impose GPS monitoring on an individual, it became a lifetime requirement. See Riley, supra, 219 N.J. at 295.

---

[6] The statute also states that it does not preclude a judge from sentencing a convicted sex offender to GPS "or other electronic monitoring . . . as a condition or requirement of supervision" in connection with sentencing a defendant to CSL or PSL pursuant to N.J.S.A. 2C:43-6.4. See N.J.S.A. 30:4-123.91(c).

In _Riley_, the Court held that the Ex Post Facto Clause precluded SOMA from being applied retroactively to an individual who committed his sexual offense before SOMA was adopted, had served his entire sentence before that date, was not on any form of parole when SOMA was adopted, but was nonetheless notified by the Parole Board in 2009 that pursuant to SOMA he would be subject to GPS monitoring for the rest of his life. The Court noted the limitations of the question it was considering in _Riley_:

> Initially, it is important to note the scenarios not implicated here. <u>This is not a case about a defendant who committed a crime after the passage of SOMA or about a defendant who was subjected to the additional condition of GPS monitoring for the duration of his probation or parole.</u> The only question we address is whether a defendant who committed a past offense and completed his sentence before enactment of SOMA can be subjected to the Parole Board's regime of GPS monitoring.
>
> [_Id._ at 291 (emphasis added).]

In rejecting the State's argument that Riley's tier classification was a new event that warranted the imposition of GPS monitoring, the Court reasoned that the tier classification itself was a product of Riley's past conduct:

> Riley's Tier 3 designation was based on his 1986 conviction and other prior sexual offense convictions. At the Megan's Law hearing, the court made no independent assessment of Riley's current dangerousness

unrelated to his prior convictions. The predicate events responsible for Riley's current regime of GPS monitoring are his 1986 sexual offense and earlier offenses, and therefore the question is whether SOMA can retroactively apply to completed conduct without offending the Constitution.

[Id. at 292.]

In determining that SOMA imposed punishment, despite its claimed remedial purpose, the Court noted that GPS monitoring was in some respects even more "onerous" than lifetime parole supervision:

> SOMA looks like parole, monitors like parole, restricts like parole, serves the general purpose of parole, and is run by the Parole Board. Calling this scheme by another name does not alter its essential nature.
>
> SOMA does not share the exact conditions of parole supervision for life. Cf. N.J.A.C. 10A:71-6.12(d) (defining conditions of parole supervision for life). In some ways, SOMA is both more and less onerous than parole supervision for life. Nevertheless, SOMA plays a role sufficiently similar to allow the comparison. Moreover, Riley cannot do anything to alter his Tier 3 (high risk) designation, which is based on his prior convictions. Unlike the Sexually Violent Predator Act, which permits for yearly review to determine whether the committee continues to pose a danger to the public and which allows for his release if he does not, N.J.S.A. 30:4-27.35 to -27.36, SOMA ensures that Riley's future is static—he is condemned to wear the electronic monitoring device for the rest of his life.
>
> [Id. at 294-95.]

Ultimately, the Court determined that the full panoply of restrictions imposed by SOMA, including lifetime GPS monitoring, was so punitive that its imposition on Riley years after he committed his crime and completed his sentence violated ex post facto principles.

> In the end, we conclude that SOMA's adverse effects are "so punitive . . . as to negate the State's intent to deem it only civil and regulatory." The retroactive application of SOMA to George Riley twenty-three years after he committed the sexual offense at issue and after he fully completed his criminal sentence violates the Ex Post Facto Clauses of the United States and New Jersey Constitutions.
>
> [Id. at 297 (citations omitted).]

On the other hand, earlier in its discussion, the Court indicated: "We do not suggest that GPS monitoring may not be added as a condition of parole supervision that is ongoing — that is, while the offender is still serving his sentence." Id. at 290 (emphasis added).[7]

Neither Perez nor Riley directly answers the question posed by this case, namely whether a person in defendant's situation, who committed his crime a decade before SOMA was enacted but who

---

[7] Had the Court not added that sentence, Riley might have drawn in question Parole Board regulations which authorize the Board to impose limited electronic monitoring, on a case-by-case basis, on any parolee who violates parole. See N.J.A.C. 10A:72-2.4(b)(3)(ii).

was on lifetime CSL at the time SOMA was enacted, may be subjected to SOMA, including prosecution for SOMA's newly created third-degree crimes. To address the question, we first consider what the Ex Post Facto Clause prohibits:

> The Ex Post Facto Clause of the U.S. Constitution prohibits "any statute which punishes . . . an act previously committed, which was innocent when done; <u>which makes more burdensome the punishment for a crime, after its commission</u>, or which deprives one charged with crime of any defense available . . . at the time when the act was committed." The Ex Post Facto Clause is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" To constitute an ex post facto penal law, a change in the law "'must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it.'" "There is 'no ex post facto violation . . . if the change in the law is merely procedural and does not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt.'" New Jersey's ex post facto jurisprudence follows the federal jurisprudence.
>
> [<u>Perez</u>, <u>supra</u>, 220 <u>N.J.</u> at 438-39 (emphasis added) (citations omitted).]

In <u>Riley</u>, the Court specifically recognized that SOMA was a "penal rather than civil law." <u>Riley</u>, <u>supra</u>, 219 <u>N.J.</u> at 275. Therefore, its application can implicate ex post facto considerations. The Court also recognized the harshness of imposing GPS monitoring as a lifetime requirement, with no

16

possibility of relief, and acknowledged that in some respects SOMA's application is even more onerous than lifetime parole. Id. at 295. That was the situation when the Board imposed GPS monitoring on defendant and on Riley.[8]

Further, although Perez did not address SOMA, the Court found that the ex post facto analysis "turn[ed] on whether the 2003 [PSL] amendment [made] more burdensome the punishment of a crime after its commission." Perez, 220 N.J. at 440. The Court concluded that, by eliminating "any prospect for parole" for certain crimes committed by a person on PSL, the Legislature had enhanced "the penal consequences for a person placed on CSL status before" enactment of the PSL statute. Id. at 442. By enhancing "the punitive consequences" of the CSL statute to the defendant's detriment, application of the PSL law to the defendant violated the Ex Post Facto Clause. Ibid.

In this case, we conclude that prosecuting defendant for the third-degree crimes created by SOMA violated the Ex Post Facto Clause. The SOMA offenses did not exist when defendant committed his predicate offenses in 1997, and at that time,

---

[8] By 2013, when defendant's trial took place, the Board had regulations enabling GPS-monitored offenders to be released from that requirement after a periodic Board review. N.J.A.C. 10A:72-11.4. But those regulations did not exist in 2008, when defendant was ordered into the SOMA GPS program, and nothing in this record suggests that the Board imposed anything less than lifetime GPS monitoring on this defendant.

violating CSL was a fourth-degree crime. It may be argued that prosecution under SOMA was not retrospective for ex post facto purposes, because SOMA was enacted before defendant committed his December 2007 violation of CSL. However, GPS monitoring under SOMA was imposed on petitioner because he "ha[d] been sentenced to a term of community or parole supervision for life pursuant to [N.J.S.A. 2C:43-6.4]." N.J.S.A. 30:4-123.91(a)(2)(b); see N.J.S.A. 30:4-123.90(e) (stating that GPS tracking should be used for offenders who "received or are serving a special sentence of community or parole supervision for life"). It was thus imposed as a further element of defendant's post-release supervision during his CSL sentence for his predicate offenses. As discussed below, the Legislature could not retroactively increase the punishment for a violation of defendant's post-release supervision.

For purposes of ex post facto analysis of penalties for violating the terms of post-release supervision, "postrevocation sanctions" are treated "as part of the penalty for the initial offense." Johnson v. United States, 529 U.S. 694, 700, 120 S. Ct. 1795, 1800, 146 L. Ed. 2d 727, 736 (2000). See Riley, supra, 219 N.J. at 292 (citing Johnson, supra, 529 U.S. at 701, 120 S. Ct. at 1801, 146 L. Ed. 2d at 736). In deciding whether such a sanction offends ex post facto principles "[w]e . . .

18

attribute postrevocation penalties to the original conviction." Johnson, supra, 529 U.S. at 701, 120 S. Ct. at 1801, 146 L. Ed. 2d at 736. Thus, "[p]enalties for violation of the terms of supervised release, including the penalty of additional supervised release, are attributed to the original conviction rather than to the violation." Commonwealth v. Cory, 911 N.E. 2d 187, 192 (Mass. 2009). "Since postrevocation penalties relate to the original offense, to sentence [defendant] to a further [punishment] would be to apply this section retroactively" and would "raise the remaining ex post facto question [of] whether that application makes him worse off." Johnson, supra, 529 U.S. at 701, 120 S. Ct. at 1801, 146 L. Ed. 2d at 736.

In this case, application of those principles leads us to conclude that the Ex Post Facto Clause barred defendant's prosecution for a third-degree crime. Being prosecuted for a third-degree crime rather than a fourth-degree crime clearly made defendant "worse off." Ibid. Whether the increase in the degree and sentencing range of the penalties for violating post-release supervision for his predicate offenses was effected by amending the penalty provision of the CSL statute, or by enacting a new statute like SOMA, the increased penalties for violating CSL, like those for violating any other form of

supervised release, are "attribute[d] . . . to the original conviction." Johnson, supra, 529 U.S. at 701, 120 S. Ct. at 1801, 146 L. Ed. 2d at 736. The Legislature could not increase the penalty for violating defendant's supervised release and apply it retroactively to him. Consequently, even if GPS monitoring was imposed as a sanction for violating CSL, defendant could not be prosecuted or sentenced under the third-degree crime provisions of SOMA. See Perez, supra, 220 N.J. at 442.

To be clear, as the Court implied in Riley, our decision does not mean that a CSL offender in defendant's situation can never be subjected to GPS monitoring. As the Court appeared to suggest in Riley, being subject to GPS monitoring is not synonymous with being subject to SOMA. The CSL statute itself gives the Parole Board authority to impose special conditions of supervision on a CSL offender, as needed for the protection of the public. N.J.S.A. 2C:43-6.4(b) (1994); Jamgochian, supra, 196 N.J. at 238. The fact that a CSL offender cannot be prosecuted using the later-created third-degree SOMA offenses does not preclude the Board from imposing some form of electronic monitoring on an offender who has violated the conditions of his ongoing CSL, regardless of when he committed the underlying offense for which the CSL sentence was imposed.

As previously noted, several years after the Parole Board imposed lifetime GPS monitoring on defendant under SOMA, the Board adopted regulations governing the measured and temporary imposition of electronic monitoring on individuals who were on CSL or PSL.  N.J.A.C. 10A:72-10.1 to -10.9.  Those regulations provide due process procedures by which those persons may challenge the imposition of such monitoring, and limit the monitoring to 180 days, with a review after the first 90 days.  N.J.A.C. 10A:72-10.2.  The regulations appear to be authorized under the CSL statute, N.J.S.A. 2C:43-6.4(b), and nothing in our opinion would preclude the Board from applying those regulations to defendant now that he has been released from prison.  "[N]ot every change in parole regulation is of sufficient moment to transgress the constitutional [ex post facto] prohibition," only those which increase the punishment.  Loftwich v. Fauver, 284 N.J. Super. 530, 536 (App. Div. 1995); see Trantino v. N.J. State Parole Bd., 331 N.J. Super. 577, 610 (App. Div. 2000), aff'd as modified, 166 N.J. 113 (2001).

In light of our disposition of this appeal, we need not decide defendant's alternate argument, based on Riley and Perez, that subjecting him to lifetime GPS monitoring under SOMA increased the punitive burden of his CSL sentence and violated the Ex Post Facto Clause.  The Court has recognized the physical

discomfort and stigma of wearing GPS equipment, and the burdensome impact of lifetime GPS monitoring. Riley, supra, 219 N.J. at 294-96. Moreover, the Parole Board Chairman's decision did not explain how defendant's CSL violations justified placing him on lifetime GPS monitoring, and such a requirement, untethered to a rational justification related to the purpose of CSL, might have ex post facto implications. See Perez, supra, 220 N.J. at 442.

However, we decline to address the issue further for two reasons. First, we have already reversed defendant's SOMA conviction on other grounds. Second, we anticipate that if defendant is subjected to GPS monitoring in the future, the Board will abide by its new regulations, which provide for both time limits on the monitoring and due process in its imposition. Thus, defendant will have a well-defined means of administratively challenging any future monitoring that may be imposed, and an appeal from that process would come to this court on a more complete record than was presented to us here.

To summarize, defendant was properly convicted of violating the terms of his CSL, and he was sentenced to eighteen months in prison, which at that time was the maximum term for a CSL violation. However, because defendant could not lawfully be prosecuted for the third-degree SOMA offenses enacted after he

committed his predicate crimes, his conviction for violating

SOMA must be reversed and the five-year sentence vacated.[9]

Affirmed in part, reversed in part.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9] In light of our resolution of the ex post facto issue, we also need not address defendant's contention that, regardless of ex post facto considerations, he could not be prosecuted under SOMA for violating his GPS monitoring requirements, because the monitoring was imposed without a due process hearing.