# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2560-19

IN THE MATTER OF
REGISTRANT S.G.

_____

Argued September 29, 2021 – Decided October 28, 2021

Before Judges Fuentes and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. ML-03-13-0025.

Michael C. Woyce, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Michael Woyce, on the brief).

Ellyn Rajfer, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Lori Linskey, Acting Monmouth County Prosecutor, attorney; Ellyn Rajfer, of counsel and on the brief).

PER CURIAM

Registrant S.G. appeals from a February 19, 2020 order denying his motion to terminate his obligations under Megan's Law, N.J.S.A. 2C:7-1 to -23, and community supervision for life (CSL), N.J.S.A. 2C:43-6.4. He argues he

submitted evidence showing that he would not pose a risk of harm to the community and contends that the trial court improperly rejected the conclusions of experts and imposed a requirement not found in the statutes. We reject S.G.'s arguments and affirm.

I.

We discern the facts and procedural history from the record. In 1997, a fifteen-year-old girl reported that, over the past three years, S.G. had repeatedly sexually assaulted her. The victim had been a tennis student at a club where S.G. worked as a coach. The assaults included repeated acts of fondling, oral sex, and sexual intercourse.

In March 1998, S.G. pled guilty to one count of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a). He was evaluated at the Adult Diagnostic Treatment Center at Avenel (the ADTC) and found to be eligible for sentencing under the Sex Offender Act, N.J.S.A. 2C:47-1 to -10, because his "actions towards [the] victim [had been] performed both repetitively and compulsively." Accordingly, in July 1998, S.G. was sentenced to eight years to be served at the ADTC. He was also sentenced to requirements under Megan's Law and CSL.

In April 2003, S.G. was released from ADTC. Shortly thereafter, he was evaluated in accordance with Megan's Law as a Tier II offender with a score of

2

forty-eight on the Registrant Risk Assessment Scale. In October 2003, an order was entered memorializing his Tier II registration and directing community notification and internet publication. The CSL was supervised by the Division of Parole within the State Parole Board. See N.J.A.C. 10A:71-1.1 and -6.11.

Following his release from the ADTC, defendant sought permission to resume teaching tennis to minors. That permission was granted under restrictions that ensured parents were present during the lessons and aware of S.G.'s conviction and Megan's Law obligations.

Since his release, S.G. has not been convicted of any new criminal offenses. He has also not been found to have violated any of his restrictions or requirements under Megan's Law or CSL. His CSL record, however, includes numerous instances where S.G. failed to comply with CSL or Megan's Law, but he was not formally charged with violations.

In October 2019, S.G. filed a motion to terminate his obligations under CSL and Megan's Law. In support of that application, he submitted an evaluation conducted by Timothy Foley, Ph.D., a letter from Emili Rambus, Psy. D., stating that he had completed sex offender counseling, and several character letters. The State opposed his motion. At the State's request, S.G. was evaluated by Janet DiGiorgio-Miller, Ph.D., and his supervision records were produced.

A-2560-19

Dr. Foley's report, dated September 27, 2018, concluded that defendant presented a negligible risk for recidivism and opined that continued community notification was not warranted. Dr. DiGiorgio-Miller's evaluation was performed in September 2019 and found that defendant had a low risk of re-offense. She recommended that defendant be released from CSL and Megan's Law reporting. Defendant's therapist, Dr. Rambus, submitted a therapy completion letter dated July 27, 2018. She opined that defendant posed a low risk of re-offense and that it would be appropriate to remove him from CSL and Megan's Law.

On February 19, 2020, the motion was heard by Judge Jill Grace O'Malley, J.S.C. Counsel presented oral arguments, but no witnesses were called. Judge O'Malley reviewed the record, which included the expert reports, the letter from Dr. Rambus, and the parole supervision report. Judge O'Malley gave considerable weight to the multiple parole infractions committed by S.G. between 2008 and 2018. She reviewed fifteen instances that included S.G. getting his hair cut at a children's salon; S.G. admitting that he did not stay at an approved residence on several nights; S.G. going to New York without permission from Parole to leave the state; S.G. using tennis courts at a high school to teach tennis lessons; S.G. attending a summer sports camp that used

4

tennis courts at Monmouth University's campus; S.G. lying to Parole about his location when he was stopped by local police after he had been at a bar with friends; and S.G. admitting to Parole that he did not inform them about his ongoing involvement with a sports camp that predominately catered to minors because he knew they would not give him permission to do so.

Judge O'Malley found that those parole infractions demonstrated S.G.'s general disregard for complying with his obligations under CSL and Megan's Law. Judge O'Malley further considered but rejected the opinions and recommendations of the two experts and Dr. Rambus. The Judge found that none of those doctors appropriately considered S.G.'s supervision record, and instead, they unduly relied on S.G.'s self-reporting. Judge O'Malley therefore found that S.G. failed to establish that he would not pose a risk to the community if he were released from his obligations under CSL and Megan's Law. Having set forth detailed reasons for her findings on the record on February 19, 2020, that same day, the Judge issued an order denying S.G.'s motion.

II.

On appeal, S.G. presents two main arguments. He contends that he (1) established clear and convincing evidence that he would not pose a risk of harm to the community; and (2) Judge O'Malley abused her discretion by imposing a

A-2560-19

requirement for termination that is not found in the relevant statutes. In that regard, he contends that Judge O'Malley reasoned that he must be tested in the community without parole restrictions to meet his burden under N.J.S.A. 2C:7-2(f) and N.J.S.A. 2C:43-6.4(c).

We review a trial court's decision on a motion to terminate obligations under CSL or Megan's Law for an abuse of discretion. See In re J.W., 410 N.J. Super. 125, 130 (App. Div. 2009) (evaluating risk of re-offense under an abuse of discretion standard). An abuse of discretion occurs when the trial judge's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

A registrant may apply to terminate the obligations under Megan's Law "upon proof that the person has not committed an offense within [fifteen] years following conviction or release from a correctional facility . . . and is not likely to pose a threat to the safety of others." N.J.S.A. 2C:7-2(f). "Relief from Megan's Law registration may be granted upon proof by a preponderance of the

evidence that a person is not likely to pose a threat to the safety of others." In re J.M., 440 N.J. Super. 107, 116 (Law. Div. 2014).[1]

Similarly, a defendant may be relieved from CSL where "the person has not committed a crime for [fifteen] years since the last conviction or release from incarceration, whichever is later, and that the person is not likely to pose a threat to the safety of others if released from parole supervision." N.J.S.A. 2C:43-6.4(c). "However, a person requesting termination from CSL/PSL obligations must demonstrate the same evidence by satisfying the court by the higher burden of 'clear and convincing evidence.'" In re J.M., 440 N.J. Super. at 116.[2]

---

[1] N.J.S.A. 2C:7-2(g) (subsection (g)), enacted in 2002, bars certain offenders from ever applying for termination of their registration requirements. The Supreme Court recently concluded that subsection (g) does not apply retroactively. In re G.H., 240 N.J. 113, 113 (2019). Judge O'Malley acknowledged this decision in her reasoning and did not bar S.G.'s application under subsection (g).

[2] CSL was replaced with Parole Supervision for Life (PSL) in 2004. See L. 1994, c. 130, § 2 (codified at N.J.S.A. 2C:43–6.4 (1995)); L. 2003, c. 267, § 1 (PSL effective Jan. 14, 2004). "Because PSL imposes greater punishment on an offender than CSL does, an offender sentenced to CSL cannot later be subjected to the harsher special sentencing provisions of the PSL statute." State v. F.W., 443 N.J. Super. 476, 483 (App. Div. 2016) (citing State v. Perez, 220 N.J. 423, 442 (2015)).

A-2560-19

Having reviewed the trial court's thorough oral decision, we affirm substantially for the reasons found by Judge O'Malley. A trial judge may accept or reject expert reports and weigh them accordingly. See State v. S.N., 231 N.J. 497, 514-15 (2018) (noting that "regardless of whether the evidence is live testimony, a videotaped statement, or documentary evidence, deference is owed to the trial court's determinations of fact and credibility"). Judge O'Malley set forth her reasons for not accepting the opinions and conclusions of the three doctors. We defer to the judge's credibility determination. See also Maison v. N.J. Transit Corp., 460 N.J. Super. 222, 232 (App. Div. 2019) (the need for expert testimony is a determination left to the discretion of a trial judge).

S.G. argues that Judge O'Malley incorrectly stated that none of the doctors considered S.G.'s supervision record while on CSL. We do not find that argument to be a fair characterization of Judge O'Malley's review. The Judge had clearly reviewed the materials from the three doctors. She pointed out that none of the doctors thoroughly evaluated the parole infractions between 2008 and 2018. Consequently, Judge O'Malley had a basis for rejecting the opinions of the two experts and the letter from the treating therapist, and we find no basis for second-guessing that evaluation.

A-2560-19

S.G. also argues that Judge O'Malley imposed a requirement that he show that he could function without parole restrictions to meet his burden that he would not pose a risk to the community. We reject this contention because it mischaracterizes Judge O'Malley's findings. Judge O'Malley detailed the parole infractions and found that defendant demonstrated a pattern of not complying with the restrictions and obligations imposed by Megan's Law and CSL. The Judge also found that those actions demonstrated that S.G. would pose a risk to the community if the restrictions were lifted. In doing so, she did note that defendant has functioned only under those restrictions since his release. There is nothing improper with noting that fact.

More to the point, Judge O'Malley did not add a new requirement to the standard for obtaining release from Megan's Law and CSL. Instead, she properly focused on the statutory requirement that a registrant prove that he or she will not pose a risk of re-offense. The record contains facts supporting Judge O'Malley's findings that S.G. failed to carry that burden. Furthermore, in making her findings, Judge O'Malley took a holistic approach to evaluating S.G.'s risk to the community. That approach is consistent with N.J.S.A. 2C:43-6.4(c) and N.J.S.A. 2C:7-2(f). See In re C.A., 146 N.J. 71, 96, 107-09 (1996) (allowing reliable hearsay evidence to be considered in judicial hearings on

Megan's Law tier classifications); <u>In re G.B.</u>, 147 N.J. 62, 81 (1996) (stating that courts should follow guidelines in conjunction with "relevant and reliable evidence" to reach "ultimate determination of the risk of reoffense posed by the registrant").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2560-19