NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0068-16T1
            A-0069-16T1
            A-0070-16T1
            A-0071-16T1

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

MELVIN HESTER,

    Defendant-Respondent.

_____

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

MARK WARNER,

    Defendant-Respondent.

_____

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

ANTHONY MCKINNEY,

    Defendant-Respondent.

_____

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

| APPROVED FOR PUBLICATION |
| :---: |
| March 23, 2017 |
| APPELLATE DIVISION |

v.

LINWOOD ROUNDTREE,

      Defendant-Respondent.

_____

Argued March 7, 2017 — Decided March 23, 2017

Before Judges Yannotti, Fasciale and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 16-04-1150, 15-12-2878, 15-10-2330, and 16-02-0481.

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Carolyn A. Murray, Acting Essex County Prosecutor, attorney; Mr. Ducoat, of counsel and on the briefs).

Molly O'Donnell Meng, Assistant Deputy Public Defender, argued the cause for respondents Melvin Hester, Mark Warner, and Anthony McKinney (Joseph E. Krakora, Public Defender, attorney; Ms. Meng, of counsel and on the briefs).

James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for respondent Linwood Roundtree (Joseph E. Krakora, Public Defender, attorney; Mr. Smith, of counsel and on the brief).

The opinion of the court was delivered by

FASCIALE, J.A.D.

These four cases, which we have consolidated in rendering this opinion, involve application of the Ex Post Facto Clauses of the United States and New Jersey Constitutions. The State

2                                                                A-0068-16T1

appeals from orders dismissing indictments against Melvin Hester (Hester), Mark Warner (Warner), Anthony McKinney (McKinney), and Linwood Roundtree (Roundtree) (collectively defendants) charging them with third-degree violations of their special sentences of community supervision for life (CSL), N.J.S.A. 2C:43-6.4(d). The State maintains that the trial judges who entered the orders erred by relying on the Ex Post Facto Clauses.

Defendants committed their original or predicate crimes, which led to the imposition of special CSL sentences, prior to 2014. Before defendants allegedly violated their CSL conditions, the Legislature amended N.J.S.A. 2C:43-6.4, effective July 2014 (the 2014 amended law or 2014 amendment). The 2014 amended law, as applied to defendants, increased the punishment for defendants' predicate crimes if they subsequently violated the conditions of their CSL sentence.

In determining whether the 2014 amended law "make[s] more burdensome the punishment for a crime, after its commission," the narrow legal issue is whether the "crime" refers to the commission of the predicate offense or the violation of a condition of CSL. State v. Muhammad, 145 N.J. 23, 56 (1996) (citing Beazell v. Ohio, 269 U.S. 167, 169-70, 46 S. Ct. 68, 68-69, 70 L. Ed. 216, 217 (1925)). We hold that the commission of the predicate crime, for which defendants received the special

sentence of CSL, is the operative "crime" for determining whether the 2014 amended law violates the Ex Post Facto Clauses. Because the 2014 amended law retroactively increased defendants' punishment for committing their predicate crimes by raising the degree of the CSL violations from a fourth degree to a third degree, mandating the imposition of Parole Supervision for Life (PSL), and subjecting them to extended prison terms, the trial courts in these cases properly relied on the Ex Post Facto Clauses and dismissed the indictments. Accordingly, we affirm the orders under review.

## I.

We begin by generally addressing the penal post-sentence supervisory schemes of CSL and PSL, setting forth the legal principles governing the Ex Post Facto Clauses, and summarizing the facts leading to these appeals.

### (a)

The Legislature has described CSL, which is punitive in nature, as a "special sentence." N.J.S.A. 2C:43-6.4(a). The purpose of CSL is to protect the public from recidivism by sexual offenders. CSL is a component of the Violent Predator Incapacitation Act, N.J.S.A. 2C:43-6.4, which is also a

component of a series of laws commonly known as "Megan's Law."[1] State v. Perez, 220 N.J. 423, 436-37 (2015). Megan's Law was in effect at the time defendants committed their predicate sexual offenses for which the court imposed CSL as part of their special sentence. An offender subject to CSL is required to abide by twenty-three enumerated "general conditions." N.J.A.C. 10A:71-6.11(b). Pursuant to N.J.A.C. 10A:71-6.11, the Parole Board is obligated to supervise defendants who are subject to CSL. Perez, supra, 220 N.J. at 437.

In 2003, the Legislature amended the law (the 2003 amendment) and replaced all references to CSL with PSL for individuals convicted of certain sexual offenses enumerated within N.J.S.A. 2C:43-6.4(a). Ibid.; see also J.B. v. N.J. State Parole Bd., 433 N.J. Super. 327, 336 (App. Div. 2013), certif. denied, 217 N.J. 296 (2014). Like CSL, PSL protects the public from recidivism by sexual offenders. The 2003 amendment provided that "the custodial term imposed upon the defendant related to the special sentence of [PSL] shall be deemed to be a term of life imprisonment." N.J.S.A. 2C:43-6.4(b). PSL therefore enhanced the penal exposure of certain persons previously sentenced to CSL. It did so by allowing the Parole

---

[1] Megan's Law includes registration and community notification for certain sex offenders. See N.J.S.A. 2C:7-1 to -23.

Board to return offenders to prison for violating their parole, rather than exposing them to committing a separate fourth-degree crime, and by exposing such individuals to mandatory extended prison terms if they committed certain predicate offenses.

The 2014 amended law further increased the penal exposure of those individuals, like defendants, who had previously committed a predicate crime and had received a special sentence for CSL. The 2014 amended law provided in part that

> a. [A] judge imposing sentence on a person who has been convicted of [certain enumerated crimes] <u>shall include</u>, in addition to any sentence authorized by this Code, a special sentence of [<u>PSL</u>].
>
> . . . .
>
> d. A person who violates a condition of a special sentence of [CSL] or [PSL] imposed pursuant to this section . . . is <u>guilty of a crime of the third degree</u> . . . . [A] person sentenced pursuant to this subsection shall be sentenced to a term of imprisonment, unless the court is clearly convinced that the interests of justice so far outweigh the need to deter this conduct and the interest in public safety that a sentence to imprisonment would be a manifest injustice.
>
> [<u>N.J.S.A.</u> 2C:43-6.4 (emphasis added).]

Thus, the 2014 amended law made more burdensome the punishment for the commission of the predicate crimes defendants committed before 2014. Defendants, who had been sentenced to CSL before the effective date of the 2014 amended law, were now

subject to a prison term of three to five years, instead of eighteen months. They also faced the mandatory imposition of extended prison terms and PSL which, unlike the remedial registration and notification requirements of Megan's Law, is considered to be a penal post-sentence supervisory scheme. See Perez, supra, 220 N.J. at 441.

(b)

The United States Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law . . . ." U.S. Const. art. I, § 10, cl. 1. The New Jersey Constitution similarly provides that "[t]he Legislature shall not pass any . . . ex post facto law . . . ." N.J. Const. art. IV, § 7, ¶ 3. "The purpose of the Ex Post Facto Clauses is to guarantee that criminal statutes 'give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.'" Muhammad, supra, 145 N.J. at 56 (emphasis omitted) (quoting Weaver v. Graham, 450 U.S. 24, 28-29, 101 S. Ct. 960, 964, 67 L. Ed. 2d 17, 23 (1981)). "Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Weaver, supra, 450 U.S. at 30, 101 S. Ct. at 965, 67 L. Ed. 2d at 24 (emphasis omitted).

"The Ex Post Facto Clause is 'aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts.'" Perez, supra, 220 N.J. at 438 (quoting Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504, 115 S. Ct. 1597, 1601, 131 L. Ed. 2d 588, 594 (1995)).

> [T]o violate the Ex Post Facto Clauses, the statute in question must either (1) punish as a crime an act previously committed, which was innocent when done; (2) make more burdensome the punishment for a crime, after its commission; or (3) deprive a defendant of any defense available according to the law at the time when the crime was committed.
>
> [Muhammad, supra, 145 N.J. at 56 (emphasis omitted) (citing Beazell, supra, 269 U.S. at 169-70, 46 S. Ct. at 68-69, 70 L. Ed. at 217).]

Applicable to these appeals is whether the 2014 amended law violates the Ex Post Facto Clauses by making "more burdensome the punishment for a crime, after its commission." Ibid. Significantly, "two critical elements must be present for a criminal or penal law to be ex post facto: [I]t must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Weaver, supra, 450 U.S. at 29, 101 S. Ct. at 964, 67 L. Ed. 2d at 23 (emphasis and footnotes omitted).

Under the first element, a "law is retrospective if it 'appl[ies] to events occurring before its enactment' or [like

here] 'if it changes the legal consequences of acts completed before its effective date.'"  Riley v. N.J. State Parole Bd., 219 N.J. 270, 285 (2014) (first alteration in original) (quoting Miller v. Florida, 482 U.S. 423, 430, 107 S. Ct. 2446, 2451, 96 L. Ed. 2d 351, 360 (1987)).  In Riley, the Court held that the Ex Post Facto Clauses precluded retroactive application of the New Jersey Sex Offender Monitoring Act (SOMA), N.J.S.A. 30:4-123.89 to -123.99, to the defendant, who had completed his sentence and was under no form of parole supervision before passage of SOMA.  Id. at 298.

Under the second element, and unlike here, "[t]here is no ex post facto violation . . . if the change in the law is merely procedural and does not increase the punishment, nor change the ingredients of the offen[s]e or the ultimate facts necessary to establish guilt."  Perez, supra, 220 N.J. at 438-39 (emphasis omitted) (quoting State v. Natale, 184 N.J. 458, 491 (2005)); see Doe v. Poritz, 142 N.J. 1, 73 (1995) (holding that the imposition of post-release registration and notification requirements of Megan's Law did not violate ex post facto prohibitions because it did not constitute punishment).

(c)

In May 2005, a jury found Hester guilty of second-degree sexual assault, N.J.S.A. 2C:14-2(c); third-degree endangering

the welfare of a child, N.J.S.A. 2C:24-4(a); and fourth-degree sexual contact, N.J.S.A. 2C:14-3(b). These convictions were for crimes committed in 2003. In August 2005, the court sentenced him to CSL, Megan's Law, and seven years in prison. At that time, a violation of CSL constituted a fourth-degree offense. After the effective date of the 2014 amendment, Hester allegedly violated conditions of his CSL by failing to reside at a residence approved by a parole officer, N.J.A.C. 10A:71-6.11(7); obtain permission to change his address, N.J.A.C. 10A:71-6.11(8); and comply with curfew requirements, N.J.A.C. 10A:71-6.11(19). In April 2016, a grand jury indicted and charged Hester with three counts of third-degree violations of the conditions of his CSL, N.J.S.A. 2C:43-6.4(d).

In June 1997, Warner pled guilty to third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). In September 1997, the court sentenced him to CSL, Megan's Law, and three years in prison. At that time, a violation of CSL constituted a fourth-degree offense. After the effective date of the 2014 amendment, Warner allegedly violated conditions of his CSL by failing to reside at a residence approved by a parole officer, N.J.A.C. 10A:71-6.11(7); and obtain permission to change his address, N.J.A.C. 10A:71-6.11(8). In December 2015, a grand jury indicted and charged Warner with two counts of

10                                              A-0068-16T1

third-degree violations of the conditions of his CSL, <u>N.J.S.A.</u> 2C:43-6.4(d).

In 1997, McKinney pled guilty to third-degree criminal restraint, <u>N.J.S.A.</u> 2C:13-2; three counts of second-degree sexual assault, <u>N.J.S.A.</u> 2C:14-2(c); and third-degree endangering the welfare of a child, <u>N.J.S.A.</u> 2C:24-4. In 1998, the court sentenced McKinney to CSL, Megan's Law, and imposed a ten-year prison term with five-year period of parole ineligibility. At that time, a violation of CSL constituted a fourth-degree offense. After the effective date of the 2014 amendment, McKinney allegedly violated a condition of his CSL by absconding from parole supervision, <u>N.J.A.C.</u> 10A:71-6.11(2). In 2015, a grand jury indicted and charged McKinney with a third-degree violation of a condition of his CSL, <u>N.J.S.A.</u> 2C:43-6.4(d).

In March 1998, Roundtree pled guilty to first-degree aggravated sexual assault of a minor, <u>N.J.S.A.</u> 2C:14-2(a); and second-degree impairing the morals of a minor, <u>N.J.S.A.</u> 2C:24-4(a). In July 1998, the court sentenced Roundtree to CSL, Megan's Law, and fifteen years in prison. After the effective date of the 2014 amendment, Roundtree allegedly violated his CSL by failing to report for parole, <u>N.J.A.C.</u> 10A:71-6.11(2); reside at an approved residence, <u>N.J.A.C.</u> 10A:71-6.11(7); and obtain

approval to change his residence, N.J.A.C. 10A:71-6.11(8). In February 2016, a grand jury indicted and charged Roundtree with three counts of third-degree violations of the conditions of his CSL, N.J.S.A. 2C:43-6.4(d).

Defendants filed motions to dismiss the indictments charging them with these third-degree CSL violations. They asserted that the 2014 amended law increased their penal exposure for violating their pre-2014 CSL sentences. Defendants argued that before the effective date of the 2014 amended law, violations of CSL constituted fourth-degree offenses. They contended that the 2014 amended law raised the penalty for CSL violations to a third-degree crime and added the imposition of PSL. As a result, defendants urged the trial judges who heard the motions to dismiss the indictments as violating the Ex Post Facto Clauses of the United States and New Jersey Constitutions. The judges agreed, granted the motions to dismiss, and entered the orders under review.

II.

On appeal, the State argues that the court erred by dismissing the indictments because the 2014 amended law does not violate the Ex Post Facto Clauses of the Federal and State Constitutions. The State treats defendants' alleged post-2014 violations of CSL, rather than the predicate offenses that

originally led to the imposition of CSL, as the "crimes" for purposes of conducting its ex post facto analysis. As a result, the State contends that application of the 2014 amended law does not make more burdensome the punishment for the commission of a "crime."

The State concedes, however, that defendants received their CSL special sentences for committing predicate crimes before the effective date of the 2014 amended law, and that defendants had faced only a fourth-degree offense for any pre-2014 violation of their CSL. For ex post facto purposes, it logically follows therefore that if the commission of the predicate offense is the "crime," instead of the CSL violations as the State maintains, then the 2014 amended law increased the defendants' punishment. The punishment for committing a predicate crime, as a result of a pre-2014 CSL violation, was limited to fourth-degree exposure; but as applied, the 2014 amended law increased the punishment for committing the predicate offense, as a result of a post-2014 CSL violation, to third-degree exposure, PSL, and imposition of a mandatory extended prison term for the commission of certain predicate offenses.

Although we generally review for an abuse of discretion a court's decision on whether to dismiss an indictment, see, e.g., State v. Triestman, 416 N.J. Super. 195, 202 (App. Div. 2010),

A-0068-16T1

the issue of whether a prosecution is prohibited by the Ex Post Facto Clauses of the Federal and State Constitutions is an issue of law. Consequently, we exercise plenary review of the issue presented here. See State v. Mann, 203 N.J. 328, 337 (2010).

It is well-settled that "[a] presumption of validity attaches to every statute." State v. Lenihan, 219 N.J. 251, 266 (2014). We may invalidate a statute as unconstitutional on its face or as applied. Id. at 267. "Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort." J.B., supra, 433 N.J. Super. at 344 (quoting Binkowski v. State, 322 N.J. Super. 359, 375-76 (App. Div. 1999)). "[A] statute . . . is facially unconstitutional only if the constitution is necessarily violated every time the law is enforced." Ran-Dav's Cty. Kosher v. State, 129 N.J. 141, 174-75 (1992) (Stein, J. dissenting), cert. denied sub nom., Nat'l Jewish Comm'n on Law & Pub. Affairs v. Ran-Dav's Cty. Kosher, Inc., 507 U.S. 952, 113 S. Ct. 1366, 122 L. Ed. 2d 744 (1993). "[A] statute . . . may be valid on its face but invalid in a particular application." Id. at 174. Here, the parties acknowledge that the 2014 amended law is facially constitutional. It may be applied to persons who commit predicate offenses and are sentenced to PSL after the effective date of the 2014 amendment. We focus on whether it

violates the Ex Post Facto Clauses as applied to these defendants.

## III.

We conclude that the 2014 amendment "makes more burdensome the punishment of a crime after its commission." Perez, supra, 220 N.J. at 440. Defendants now face third-degree offenses, rather than fourth-degree exposure. Certainly, "[b]eing prosecuted for a third-degree crime rather than a fourth-degree crime clearly [makes a] defendant 'worse off.'" State v. F.W., 443 N.J. Super. 476, 489 (App. Div.) (quoting Johnson v. United States, 529 U.S. 694, 701, 120 S. Ct. 1795, 1801, 146 L. Ed. 2d 727, 736 (2000)), certif. denied, 227 N.J. 150 (2016). And the imposition of PSL as a consequence of violating their CSL permits the Parole Board to return defendants to prison for violating parole, and subjects defendants to mandatory extended prison terms under N.J.S.A. 2C:43-6.4(e)(1). See also Perez, supra, 220 N.J. at 441-42.

Of course, that begs the question of what "crime after its commission" means. We reached our conclusion by determining that the "crime," for purposes of applying the Ex Post Facto Clauses, is not the violation of CSL, but rather, the commission of the predicate offense for which the court originally imposed the special sentence of CSL. In other words, the "crime" is the

predicate sexual offense, which defendants committed before the effective date of the 2014 amendment, rather than the post-2014 CSL alleged violations. The legal reasoning in Perez and F.W. help inform our analysis.

In Perez, the defendant received CSL as part of his special sentence for committing a predicate offense in 1998. Perez, supra, 220 N.J. at 427, 436. In 2010, after the 2003 amendment in which Legislature replaced all references to CSL with PSL, the defendant violated the terms of his CSL. Id. at 428. On the violation of his CSL, the court applied the 2003 amendment and sentenced the defendant to the increased penalty of PSL. Id. at 429.

The Court held that "[a]s applied to defendant, the 2003 amendment to N.J.S.A. 2C:43-6.4(e) enhance[d] the punitive consequences of the special sentence of CSL to his detriment and violate[d] the federal and state prohibition of ex post facto legislation." Id. at 442. Importantly, the Court stated that the 2003 amendment enhanced "the penal exposure of a person previously sentenced to CSL for certain offenses committed while sentenced to that status." Id. at 443. In other words, the defendant's post-2003 CSL violation increased the punishment for committing the predicate crime. That is so because prior to the effective date of the 2003 amendment, the defendant was not

subject to PSL as part of his special CSL sentence for committing the predicate offense.

In F.W., the defendant received CSL as part of his special sentence for committing a predicate offense in 1999. Supra, 443 N.J. Super. at 480. In approximately 2008, the defendant violated the terms of his CSL. Id. at 481. On that violation, the court, in accord with N.J.S.A. 2C:43-6.4(d), enrolled him in GPS monitoring pursuant to SOMA, which the Legislature enacted in 2007. Ibid. The defendant violated his CSL again by removing the GPS tracker. Ibid. Before the effective date of the 2014 amended law, the State charged the defendant with a fourth-degree CSL violation and two third-degree SOMA violations. Id. at 478. A judge found the defendant guilty of those charges. Ibid. We reversed the SOMA convictions on ex post facto grounds, stating:

> The SOMA offenses did not exist when defendant committed his predicate offenses in 1997, and at that time, violating CSL was a fourth-degree crime. It may be argued that prosecution under SOMA was not retrospective for ex post facto purposes, because SOMA was enacted before defendant committed his December 2007 violation of CSL. However, GPS monitoring under SOMA was imposed on [the defendant] because he "ha[d] been sentenced to a term of community or [PSL] pursuant to [N.J.S.A. 2C:43-6.4]." . . . It was thus imposed as a further element of [the] defendant's post-release supervision during his CSL sentence for his predicate offenses . . . . [Like here,] the

> > Legislature could not retroactively increase
> > the punishment for a violation of
> > defendant's post-release supervision.
>
> > [Id. at 488-89 (first and third alteration
> > in original) (emphasis added) (quoting
> > N.J.S.A. 30:4-123.91(a)(2)(b)).]

We stated further that "[f]or purposes of [our] ex post facto analysis of penalties for violating the terms of post-release supervision, 'postrevocation sanctions' are treated 'as part of the penalty for the initial offense.'" Id. at 489 (quoting Johnson, supra, 529 U.S. at 700, 120 S. Ct. at 1800, 146 L. Ed. 2d at 736).

In deciding whether sanctions violated ex post facto principles, we attributed "postrevocation penalties to the original conviction." Ibid. (quoting Johnson, supra, 529 U.S. at 701, 120 S. Ct. at 1801, 146 L. Ed. 2d at 736). We stated that "[p]enalties for violation of the terms of supervised release, including the penalty of additional supervised release, are attributed to the original conviction rather than to the violation." Ibid. (alteration in original) (quoting Commonwealth v. Cory, 911 N.E. 2d 187, 192 (Mass. 2009)). We concluded that

> > the Ex Post Facto Clause barred [the]
> > defendant's prosecution for a third-degree
> > crime [(the SOMA offense)]. Being
> > prosecuted for a third-degree crime rather
> > than a fourth-degree crime clearly made
> > defendant "worse off." Whether the increase

> in the degree and sentencing range of the penalties for violating post-release supervision for his predicate offenses was effected by amending the penalty provision of the CSL statute, or by enacting a new statute like SOMA, the increased penalties for violating CSL, like those for violating any other form of supervised release, are "attribute[d] . . . to the original conviction." The Legislature could not increase the penalty for violating defendant's supervised release and apply it retroactively to him. Consequently, even if GPS monitoring was imposed as a sanction for violating CSL, defendant could not be prosecuted or sentenced under the third-degree crime provisions of SOMA.
>
> [Id. at 489-90 (third alteration in original) (emphasis added) (quoting Johnson, supra, 529 U.S. at 701, 120 S. Ct. at 1801, 146 L. Ed. 2d at 736).]

Here, for purposes of conducting our ex post facto analysis of the enhanced post-2014 penalties for violating the pre-2014 special sentence of CSL, the commission of the pre-2014 predicate sexual offenses, not the post-2014 CSL violations, constitute the "crime." See also Loftwich v. Fauver, 284 N.J. Super. 530, 535 (App. Div. 1995) (indicating that the Ex Post Facto Clause is violated when a parole violator is punished in a way that adversely affects his release date under a statute adopted after the violator committed the underlying offense but before he violated the terms of his parole (citing United States v. Paskow, 11 F.3d 873, 878 (9th Cir. 1993)).

Finally, the State's reliance on the constitutionality of certain recidivist statutes is unpersuasive. "Recidivist statutes stiffen penalties for the latest crime; they do not increase the penalty for a prior offense." State v. Zeikel, 423 N.J. Super. 34, 42 (App. Div. 2011). See United States v. Rodriquez, 553 U.S. 377, 386, 128 S. Ct. 1783, 1789, 170 L. Ed. 2d 719, 728 (2008) (enhanced sentence is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because it is a repetitive crime).

"The Supreme Court has held that recidivist statutes do not violate the Ex Post Facto Clause if they were on the books at the time the triggering offense was committed." State v. Oliver, 162 N.J. 580, 587 (2000) (emphasis omitted) (citing Gryger v. Burke, 334 U.S. 728, 732, 68 S. Ct. 1256, 1258, 92 L. Ed. 1683, 1687 (1948)); see also Nichols v. United States, 511 U.S. 738, 747, 114 S. Ct. 1921, 1927, 128 L. Ed. 2d 745, 754 (1994) (indicating that recidivist statutes do not violate ex post facto prohibitions because they "do not change the penalty imposed for the earlier conviction"); United States v. Arzate-Nunez, 18 F.3d 730, 734 (9th Cir. 1994) (finding that, in analyzing repeat offender statutes and statutes increasing penalties for future crimes based on past crimes, the relevant offense is the current crime, not the predicate crime). Here,

the triggering offense is the commission of the predicate crime for which defendants received CSL.

For example, in <u>Oliver</u>, <u>supra</u>, 162 <u>N.J.</u> at 587, the Court rejected the defendant's ex post facto challenge to the "Three-Strikes Law," <u>N.J.S.A.</u> 2C:43-7.1. In that case, the Legislature enacted the law in June 1995, and the defendant had committed the offense constituting his third strike in December of that year. <u>Ibid.</u> Citing to <u>Gryger</u>, <u>supra</u>, 334 <u>U.S.</u> at 732, 68 <u>S. Ct.</u> at 1258, 92 <u>L. Ed.</u> at 1687, the Court held that the "Three-Strikes Law" did not violate the Ex Post Facto Clause because it had been enacted "at the time the triggering offense was committed." <u>Oliver</u>, <u>supra</u>, 162 <u>N.J.</u> at 587.

Likewise, in <u>State v. Carrigan</u>, 428 <u>N.J. Super.</u> 609, 612-13 (App. Div. 2012), <u>certif. denied</u>, 213 <u>N.J.</u> 539 (2013), the defendant was charged on September 27, 2011, with a violation of <u>N.J.S.A.</u> 2C:40-26(b) (effective August 1, 2011), which makes it a fourth-degree crime for a motorist to operate a vehicle at a time when his driver's license has been suspended or revoked for a second or subsequent conviction for driving while intoxicated (DWI). The defendant had been convicted for DWI and refusal at least thirteen times between 1983 and 2010, and his license was accordingly suspended. <u>Id.</u> at 615. We stated that

> a violation of <u>N.J.S.A.</u> 2C:40-26(b) comprises a new offense based upon new

conduct, and that the statute does not impose retrospective punishment for a prior offense. Hence, the law may be constitutionally applied to drivers with suspended licenses, such as defendant, who are caught driving after August 1, 2011, regardless of whether their DWI-based suspensions were imposed before that date.

[Id. at 613.]

We explained:

Defendant likens his circumstances to an instance where a new law unconstitutionally attempts to make the terms of a criminal sentence, such as the terms of parole or probation, more stringent after the fact. Cf. Johnson, supra, 529 U.S. 694, 120 S. Ct. 1795, 146 L. Ed. 2d 727 (involving a statute that retroactively increased penalties for violating the terms of parole). We reject this conception of what N.J.S.A. 2C:40-26(b) accomplishes.

N.J.S.A. 2C:40-26(b) does not change the duration of the license suspensions that were previously imposed upon him before the new law took effect. His ten-year suspensions, duly imposed under N.J.S.A. 39:4-50(a)(3), have not been lengthened. Nor is he prohibited during his periods of suspension from doing anything that he could not have lawfully done before. The only thing that is different is that if defendant commits a new offense by getting behind the wheel after August 1, 2011[,] while still under suspension, he now faces a criminal penalty for that new conduct. There is nothing unconstitutional about treating such prior offenses as enhancement factors for wrongful conduct that post-dates the new law.

[Id. at 621-22.]

22                                                    A-0068-16T1

In contrast here, N.J.S.A. 2C:43-6.4 "enhances the punitive consequences of [] CSL," a supervisory penal sentence, after the fact. Perez, supra, 220 N.J. at 442. Notably, under the recidivist statutes, penalties are increased for the latest crime — every offense is an independent crime and the punishment increases for each additional crime committed because it is considered to be an aggravated offense. Vartelas v. Holder, 566 U.S. 257, 271-72, 132 S. Ct. 1479, 1490, 182 L. Ed. 2d 473, 488 (2012); Gryger, supra, 334 U.S. at 732, 68 S. Ct. at 1258, 92 L. Ed. at 1687; Zeikel, supra, 423 N.J. Super. at 42. Here, such is not the case.

Conversely, not all conduct violating the conditions of CSL contrary to N.J.S.A. 2C:43-6.4 need be criminal. For example, an offender sentenced to CSL must reside at a residence approved by a parole officer, obtain permission prior to leaving the state, and secure permission prior to engaging in any employment or volunteer activity. N.J.A.C. 10A:71-6.11(7),(9),(16). None of this conduct constitutes an independent criminal act.

For defendants, conduct violating the conditions of CSL clearly constitutes a crime, but that is so solely because it violates conditions imposed as part of the supervisory sentence, which in turn, relates back to the commission of the initial predicate offense. See State v. Schubert, 212 N.J. 295, 307

(2012) (indicating that the Legislature viewed CSL "as an integral part of a defendant's sentence, imposed as part of a court's sentencing authority"). Defendants' violation of the terms of their CSL is therefore not an aggravated offense because it is not a repetitive crime.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION