NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2203-15T1

J.S.,

    Appellant,

v.

NEW JERSEY STATE PAROLE BOARD,

    Respondent.

_____

APPROVED FOR PUBLICATION

September 26, 2017

APPELLATE DIVISION

Argued May 23, 2017 — Decided September 26, 2017

Before Judges Messano, Espinosa, and Suter.

On appeal from the New Jersey State Parole Board.

James H. Maynard argued the cause for appellant (Maynard & Sumner, LLC, attorneys; Mr. Maynard, on the brief).

Christopher C. Josephson, Deputy Attorney General, argued the cause for respondent (Christopher S. Porrino, Attorney General, attorney; Lisa A. Puglisi, Assistant Attorney General, of counsel; Mr. Josephson, on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

J.S. appeals the December 16, 2015 final agency decision of the New Jersey State Parole Board (Board) that denied his "Petition for International Parole Transfer" to the country of Sweden. J.S.

is subject to the special sentence of community supervision for life (CSL) required under the Violent Predator Incapacitation Act, N.J.S.A. 2C:43-6.4,[1] for certain offenses. We reverse the Board's denial because it did not consider whether it could supervise or monitor J.S.'s compliance with the conditions of CSL or impose special conditions, but incorrectly concluded that J.S. requested to terminate CSL, which was error.

In 2002, when he was then twenty-three-years old, J.S. had sex with a fifteen-year-old, although he alleged not to be aware of her age. He pled guilty in January 2003, to third-degree endangering the welfare of a child by engaging in sexual conduct which would impair or debauch the morals of a child, N.J.S.A. 2C:24-4(a). J.S. was sentenced to three years of probation, to the registration and notification provisions under Megan's Law, N.J.S.A. 2C:7-1 to -23, and to CSL, N.J.S.A. 2C:43-6.4. He has completed probation, but as a Tier One Megan's Law offender, he is required to register and also remains subject to CSL requirements.

J.S. is now married to a Swedish citizen and together they have two children. His wife's family owns a small business in

---

[1] Effective January 14, 2004, N.J.S.A. 2C:43-6.4 was amended. It now provides for "parole supervision for life." L. 2003, c. 267, § 1 (codified at N.J.S.A. 2C:43-6.4(a)).

Sweden. J.S. and his wife want to move to Sweden to manage the business for "a better quality of life for their young children" and to earn more income. J.S. requested a permanent residence permit from Sweden. He alleges that he gave the Swedish Migration Board and the Swedish Embassy "full-disclosure of [his] offense history, and the terms of [his] supervision." The Swedish Migration Board granted him "a permanent residence permit . . . based on family ties."

J.S. filed a Petition for International Parole Transfer with the Board. On July 8, 2015, the Adult Panel of the Board denied the application. It asserted that if J.S. were "permitted to reside in the country of Sweden, [he] will not be under supervision and will not be under any restrictions which he . . . [is] subject to under the present conditions of supervision." The effect would be to "terminate the special sentence of community supervision for life" which is contrary to the legislature's intent and beyond the Board's authority to order.

J.S.'s appeal to the full Board was denied on December 16, 2015. The Board agreed with J.S. that he "[was] not requesting to be transferred to another state, the rules of the Interstate Compact for Adult Supervision d[id] not apply and that there [were] no rules that exist[ed] for the international transfer of parolees." However, the Board observed, "CSL is an essential

component of the sentence to ensure the protection of the public for at least a period of 15 years since the last conviction or release from incarceration, whichever is later." It "recognize[d] the statutory mandate that offenders . . . be supervised." The Board found that permitting J.S. to reside outside of New Jersey and the United States and in Sweden "without any ability of any supervision or law enforcement authority to monitor [J.S's] compliance with the conditions of his CSL is in contravention of the statute." The Board noted that J.S. had the ability to "petition the court for a release from CSL in January 2018."

On appeal, J.S. contends the Board erred because the legislature's purpose in establishing CSL was to "(1) protect the public and (2) foster rehabilitation," and his relocation to Sweden with his family would further the legislative intent behind CSL and was not in conflict with it. He alleges the Board erred in treating his request as if he were requesting termination of the CSL requirements. He acknowledged he would "resume" his "duty to report and be supervised" if he moved back to New Jersey.

An administrative agency's final decision is sustained unless it is arbitrary, capricious, or unreasonable, unsupported by substantial credible evidence in the record, or contrary to express or implied legislative policies. Saccone v. Bd. of Tr. of Police and Firemen's Ret. Sys., 219 N.J. 369, 380 (2014); Lavezzi v.

State, 219 N.J. 163, 171 (2014). We are not "bound by [the] agency's interpretation of a statute or its determination of a strictly legal issue[.]" Id. at 173 (quoting Norfolk S. Ry. Co. v. Intermodel Props., LLC, 215 N.J. 142, 165 (2013)).

J.S. was sentenced to CSL. "Community supervision for life was 'designed to protect the public from recidivism by defendants convicted of serious sexual offenses.'" J.B. v. N.J. State Parole Bd., 433 N.J. Super. 327, 336 (App. Div. 2013), aff'd in part and mod. in part, 229 N.J. 21 (2017) (quoting Jamgochian v. N.J. State Parole Bd., 196 N.J. 222, 237-38 (2008)). CSL was enacted in 1994 as part of the Violent Predator Incapacitation Act, N.J.S.A. 2C:43-6.4, known as "Megan's Law." State v. Hester, 449 N.J. Super. 314, 319 (App. Div. 2017). CSL is a "special sentence" and as such, it is punitive in nature, not remedial. Ibid.; see State v. Schubert, 212 N.J. 295, 308 (2012) (concluding "we are satisfied that N.J.S.A. 2C:43-6.4 is punitive rather than remedial at its core"); see also State v. Perez, 220 N.J. 423, 441 (2015). "Persons who have been convicted between 1994 and 2004 of certain sexual offenses enumerated within N.J.S.A. 2C:43-6.4(a) must serve in addition to any existing sentence, 'a special sentence' of 'community supervision for life . . . .'" J.B., supra, 433 N.J. Super. at 336. After 2004, the special sentence is "parole" supervision for life. Ibid.

Under the 1994 Act, an offender sentenced to CSL is "supervised as if on parole and subject to conditions appropriate to protect the public and foster rehabilitation." L. 1994, c. 130, § 2(b). The Board promulgated regulations setting forth general conditions for CSL "subject to any special conditions established by the appropriate Board panel." N.J.A.C. 10A:71-6.11(b). Under the regulations, the offender is to "[r]eside at a residence approved by the assigned parole officer" and must "[o]btain the permission of the assigned parole officer prior to any change of residence." Moreover, permission must be obtained "prior to leaving the state of the approved residence for any purpose." Ibid. There are no provisions that address international travel.[2]

When J.S. committed the offense, the statute provided that a "person sentenced to a term of community supervision for life may petition the Superior Court for release from community supervision." L. 1994, c. 130, § 2(c). The court could grant the application "only upon proof that the person has not committed a crime for [fifteen] years since last conviction or release from incarceration, whichever is later, and that person is not likely

_____

[2] Other Board regulations address the state-to-state transfer of parole supervision, which is not an issue here. See N.J.A.C. 10A:71-6.10.

to pose a threat to the safety of others if released from supervision." Ibid.

The Board treated J.S's petition as if he were asking to terminate CSL. We agree with the Board that CSL may be terminated only upon application to the Superior Court and not by the Board. However, we also agree with J.S. that his petition was to transfer supervision based on a proposed change in residence and not to terminate CSL.

The Board's decision assumed that because J.S. requested to reside in Sweden, he would be residing there "without any ability of any supervision or law enforcement authority to monitor [J.S.'s] compliance with the conditions of his CSL . . . in contravention of the statute" that requires supervision for at least fifteen years. However, the level of actual supervision to which J.S. is subject is unclear, including the frequency in which he is required to report to or meet with a parole officer, to take a polygraph or the means utilized to ensure his compliance with the conditions of his CSL.

It was error not to consider if appropriate supervision of J.S. could continue. In Sanchez v. N.J. State Parole Bd., 368 N.J. Super. 181 (App. Div.), certif. granted, 182 N.J. 140 (2004), appeal dismissed, 187 N.J. 487 (2006), we reversed a decision by the Parole Board denying petitioner's request to live in New York

State.  New York declined the Board's request to accept supervision of petitioner because of our Board's limitation in enforcement if the petitioner violated conditions of his release or supervision. In reversing the Board, we held that if the petitioner has "good cause" to move to another state and that state will not accept supervision, this was "an insufficient reason for keeping a CSL defendant here." Id. at 188.  "The spirit of the original Megan's Law is best served by interpreting it to permit CSL defendants who otherwise qualify for residence in another state under [the then current parole transfer rules] to live in that state even if that state declines supervision."  Ibid.  We held that "the Parole Board may make the change in residence subject to conditions appropriate to protect the public and foster rehabilitation." Id. at 188-89.

It may be that there are adequate procedures to supervise J.S. consistent with his level of risk and the manner in which he is currently supervised, but the record is devoid of any information about his level of supervision or how that may or may not be able to continue because the Board simply assumed his petition was one for termination and not for permission to transfer residence and supervision.  The Board has the ability to impose conditions appropriate for the protection of the public and for rehabilitation.  It certainly had the ability to require J.S. to

A-2203-15T1

suggest appropriate conditions.  However, on this record, the Board did not undertake an informed consideration of any conditions that might be appropriate before denying J.S.'s application.  We deem arbitrary the Board's decision to reject summarily J.S.'s request by treating it as an application to terminate CSL without considering the merits of his application.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION