**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1243-16T2

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

PAUL TIMMENDEQUAS,

     Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **July 22, 2019**
>
> **APPELLATE DIVISION**

Argued February 4, 2019 – Decided July 22, 2019

Before Judges Messano, Fasciale and Gooden Brown.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 15-11-1377.

Jennifer E. Kmieciak, Deputy Attorney General, argued the cause for appellant (Gurbir S. Grewal, Attorney General, attorney; Jennifer E. Kmieciak, of counsel and on the brief).

James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; James K. Smith, Jr., of counsel and on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

In 1998, defendant Paul Timmendequas pled guilty to second-degree sexual assault, N.J.S.A. 2C:14-2(b), and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a).  The judge sentenced defendant in 1999 to two concurrent seven-year terms of imprisonment at the Adult Diagnostic and Treatment Center, the registration requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23, and community supervision for life (CSL), pursuant to the Violent Predator Incapacitation Act, N.J.S.A. 2C:43-6.4(a), a "component" of Megan's Law.  State v. Schubert, 212 N.J. 295, 305 (2012).

N.J.S.A. 2C:7-2(a) criminalizes the failure to register as required by subsections (c) and (d) of the statute.  Subsection (c) governs the obligations to initially register, and subsection (d) specifically criminalizes the failure to notify the appropriate authorities and re-register upon relocation.  When defendant was convicted, a person committed a fourth-degree crime if he failed to register as a sex offender or failed to notify the appropriate authorities and re-register upon relocating.  N.J.S.A. 2C:7-2(a) and (d) (1999).  Similarly, violating conditions of CSL was a fourth-degree crime.  N.J.S.A. 2C:43-6.4(d) (1999).  The Legislature increased the penalty for failing to register as a sex offender under subsection (a) to a third-degree crime in 2007.  L. 2007, c. 19.  It increased the penalties for failing to notify and re-register upon relocation,

and for violating conditions of CSL, to third-degree crimes in 2014.  L. 2013, c. 214.[1]

In 2015, a Middlesex County grand jury indicted defendant for third-degree violation of conditions of CSL, N.J.S.A. 2C:43-6.4(d) (count one); third-degree absconding from parole, N.J.S.A. 2C:29-5(b) (count two); two counts of third-degree failure to register as a sex offender and to notify law enforcement of relocation and re-register, N.J.S.A. 2C:7-2(a) and (d) (counts three and four); and third-degree theft, N.J.S.A. 2C:20-9 (count five).[2] Defendant moved to dismiss counts one, three and four, arguing that when he was convicted of the underlying sex offenses, see N.J.S.A. 2C:7-2(b), the crimes charged in those counts were not third-degree offenses.  Defendant

---

[1]  Earlier, in 2004, the Legislature replaced CSL with parole supervision for life (PSL).  L. 2003, c. 267.  In State v. Perez, 220 N.J. 423, 442 (2015), the Court held that applying the PSL amendments to defendants previously sentenced to CSL violated the Ex Post Facto Clauses of the federal and state constitutions.  See U.S. Const. art. I, § 10, cl. 1; N.J. Const. art. IV, § 7, ¶ 3.

[2]  Counts three and four charged defendant with violating N.J.S.A. 2C:7-2(a) and (d) twice on the same day, once when he failed to notify the Edison Police Department ten days before he intended to relocate from his Edison residence, and again when he failed to notify the Bridgewater Police Department and re-register within ten days of his intention to move to that town.

contended that increasing his potential sentence exposure violated the Ex Post Facto Clauses.[3]

In a thoughtful written opinion, Judge Colleen M. Flynn agreed. She entered an order dismissing counts one, three and four without prejudice to the State's ability to re-indict defendant "with appropriate grading of the charges." We granted the State leave to appeal.

We stayed this appeal and several others because the Court had granted certification in State v. Hester, 233 N.J. 115 (2017). There, the defendant, who was convicted prior to the 2014 amendment to N.J.S.A. 2C:43-6.4(d), argued the increased penalty for violating the conditions of CSL ran afoul of the Ex Post Facto Clauses. The Court agreed. State v. Hester, 233 N.J. 381, 385 (2018) ("[T]he Federal and State Ex Post Facto Clauses bar the retroactive application of the 2014 Amendment to defendants' CSL violations."). As a result, the State withdrew its appeal of that part of Judge Flynn's order dismissing count one.

The State now contends:

POINT I

THERE IS NO EX POST FACTO VIOLATION WHEN A SEX OFFENDER WHO FAILS TO

---

[3] Defendant also argued this violated principles of double jeopardy. The judge rejected that claim, and defendant has not raised the issue before us.

REGISTER AFTER MARCH 1, 2007 IS CHARGED
WITH A THIRD[-]DEGREE CRIME.

The State's primary argument is that charging defendant with a third-degree offense does not violate the Ex Post Facto Clauses because "the amended statute applies only <u>prospectively</u> to defendant's <u>new crimes</u> of failing to register <u>after</u> March 1, 2007[,]" and "does not retroactively increase the penalties for defendant's 1999 . . . convictions." The State contends that <u>Hester</u> does not compel a contrary result.

Defendant's counter-argument is simple. He contends that registration was a condition of his 1999 sentence. Increasing the penalties for failing to register or notify and re-register upon relocation, therefore, imposes additional punishment after he committed his crime, in violation of the Ex Post Facto Clauses.[4]

I.

In <u>Hester</u>, the defendants were sentenced to CSL prior to the 2014 amendment that increased the penalty for a violation of CSL from a fourth- to a third-degree crime punishable by a presumptive prison term, and converted CSL to PSL with additional restrictions and consequences in case of such a

---

[4] Because defendant is charged with conduct that occurred after the 2007 amendment to N.J.S.A. 2C:7-2(a), and the 2014 amendment to subsection (d), even though the parties cite to and refer to only the 2007 amendment, we refer to both generically as "the amendments" for the balance of the opinion.

violation. 233 N.J. at 385. The trial judges concluded that applying the amended statute to the defendants violated the Ex Post Facto Clauses, and we affirmed on appeal. Id. at 390.

Before the Court, the State argued, "[b]ecause [the] defendants committed their CSL violations after the effective date of the [a]mendment, . . . they committed new crimes subject to new statutory punishments and therefore the [a]mendment did not relate back or increase the punishment for [the] defendants' predicate sex offenses." Id. at 390-91. According to the State, because the defendants' offenses were new offenses, prosecuting them as third-degree offenses was not an ex post facto violation.

The Court rejected the argument. Justice Albin wrote:

> An ex post facto law is defined by two critical elements. "[F]irst, the law 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.'" A retroactive law that merely effects a procedural change to a statutory scheme will fall outside of the constitutional prohibition. In contrast, a law that retroactively "imposes additional punishment to an already completed crime" disadvantages a defendant, and therefore is a prohibited ex post facto law.
>
> The State contends that the "completed crime" is the CSL violation, whereas [the] defendants assert that the "completed crime" is the predicate offense. Here, because the additional punishment attaches to a condition of [the] defendants' sentences, the

"completed crime" necessarily relates back to the predicate offense.

[Id. at 392 (first alteration in original) (citations omitted).]

Focusing on the precise issue before it, the Court noted that "[p]arole and probation are punishments imposed for the commission of a crime." Id. at 393 (citing Riley v. N.J. State Parole Bd., 219 N.J. 270, 288 (2014)). "A statute that retroactively imposes increased 'postrevocation penalties [on a scheme of supervised release] relate[s] to the original offense,' raising the issue of whether the defendant is 'worse off' for ex post facto purposes." Ibid. (alterations in original) (quoting Johnson v. United States, 529 U.S. 694, 701 (2000)). As a result,

the 2014 [a]mendment materially altered [the] defendants' prior sentences to their disadvantage — increasing to a third-degree crime a violation of the terms of their supervised release and converting their CSL to PSL . . . . The 2014 [a]mendment effected not a simple procedural change but rather one that offends the very principles animating the Ex Post Facto Clauses of our Federal and State Constitutions.

[Id. at 398.]

II.

Employing similar reasoning, we might conclude that the amendments to N.J.S.A. 2C:7-2 that increased penalties for failing to register and for failing to notify law enforcement and re-register upon relocation were both retroactive in

7

their application and disadvantaged defendant. Id. at 392. The additional punishment attached to a "completed crime," because the community registration provisions of Megan's Law are "condition[s] of defendant['s] sentence[]." Ibid.

Recognizing the potential impact of Hester, the State alternatively asserts that this case is different "for at least three critical reasons." It contends that Hester only dealt with violations of CSL, and the Court made no mention of a "completely separate statute, N.J.S.A. 2C:7-2." The argument is unpersuasive because there is no indication that the defendants in Hester raised the issue, and therefore it was not before the Court.[5]

The State also argues that the United States Supreme Court has already held that because registration is not "punitive," "[a] sex offender who fails to

---

[5] Nor did the defendants raise the issue before us. See State v. Hester, 449 N.J. Super. 314 (App. Div. 2017). Although we stated that the defendants "faced the mandatory imposition of extended prison terms and PSL which, unlike the remedial registration and notification requirements of Megan's Law, is considered to be a penal post-sentence supervisory scheme," id. at 320, we made that statement, not to resolve whether retrospective increased punishment for failure to register violates the Ex Post Facto Clause, but rather, to acknowledge the remedial purposes of Megan's Law. See Doe v. Poritz, 142 N.J. 1, 73 (2015) (concluding Megan's Law was "clearly and totally remedial in purpose" and "designed simply and solely to enable the public to protect itself from the danger posed by sex offenders"). We were never asked to address the constitutionality of retrospective increased punishment for the failure to register or to notify and re-register upon relocation.

comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense." Smith v. Doe, 538 U.S. 84, 101-02 (2003).

However, the sole issue before the Court in Smith was the constitutionality of Alaska's registration and community notification statute as applied to sex offenders convicted prior to its passage.[6] Id. at 89-91. Here, the State seeks to extend the import of the single sentence cited above by removing it from its context in the opinion:

> A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense. Whether other constitutional objections can be raised to a mandatory reporting requirement, and how those questions might be resolved, are . . . beyond the scope of this opinion. It suffices to say the registration requirements make a valid regulatory program effective and do not impose punitive restraints in violation of the Ex Post Facto Clause.
>
> [Id. at 101-02.]

Several federal courts have recognized the limits of Smith's holding. See, e.g., Doe v. Snyder, 834 F.3d 696, 703 (6th Cir. 2016) ("Smith . . .

---

[6] Coincidentally, the Alaska Supreme Court held the registration statute at issue in Smith was punitive, and its retroactive application to previously convicted sex offenders violated the state constitution. Doe v. State, 189 P.3d 999, 1018-19 (Alaska 2008).

involved nothing more than reporting requirements . . . ."); <u>United States v. Young</u>, 582 F. Supp. 2d 846, 851 (W.D. Tex. 2008) ("The Supreme Court did not determine whether prosecution of retroactively applied registration requirements, which impose criminal penalties, violate the ex post facto clause."); <u>United States v. Gillette</u>, 553 F. Supp. 2d 524, 528 (V.I. 2008) ("<u>Smith</u> does not even remotely stand for the proposition that retrospective punishment for failure to register . . . is permissible under the Ex Post Facto Clause."); <u>United States v. Stinson</u>, 507 F. Supp. 2d 560, 565 (S.D. W. Va. 2007) ("It is clear in reading <u>Smith</u> that the primary focus of the Supreme Court was whether the registry and notification requirements themselves violated the Ex Post Facto Clause.").

Here, defendant did not challenge, nor could he, the constitutionality of Megan's Law, including its imposition of criminal penalties for those who fail to register or notify and re-register upon relocation. <u>Poritz</u>, 142 N.J. at 21-22; <u>see also</u> <u>id.</u> at 43 (holding Megan's Law "does not constitute punishment even though . . . it may indirectly and adversely affect, potentially severely, some of those subject to its provisions"). Defendant's challenge is to the amendments, which, he contends, "materially altered defendant['s] prior sentence[] to [his] disadvantage." <u>Hester</u>, 233 N.J. at 398.

We come then to the State's final and most persuasive argument.  It notes that N.J.S.A. 2C:7-2 requires all sex offenders to register, including those who are not on any form of supervised release under CSL or PSL, either because their crimes pre-dated the passage of Megan's Law, or because their particular sex offense does not require a mandatory PSL sentence under N.J.S.A. 2C:43-6.4(a).  The State contends the holding in Hester is limited, therefore, because it was "premised on the Court's finding that the amended version of N.J.S.A. 2C:43-6.4 enhanced the penalties for a violation of 'supervised release[,]'" an obvious penal consequence of the defendants' original conviction.  See Hester, 233 N.J. at 385 ("Community supervision for life was a punishment imposed on defendants at the time they were sentenced."); see also Schubert, 212 N.J. at 307 (distinguishing the consequences of registration and notification from "the significant restrictions that are attendant to [CSL]").  Because registration is not punishment imposed at the time of sentencing,  Poritz, 142 N.J. at 43, increasing the penalty for failing to register or notify and re-register upon relocation was not "additional punishment [that] attache[d] to a condition of defendant['s] sentence[]."  Hester, 233 N.J. at 392.[7]  While there is intuitive appeal to the argument, we reject it.

---

[7]   The Sixth Circuit concluded that Michigan's pervasive registration requirements and restrictions, combined with enforcement by criminal

(continued)

A-1243-16T2

Initially, the Legislature could have chosen an alternative method to compel compliance with Megan's Law's registration requirements, but, instead it elected to impose potential penal consequences upon those who failed to register or provide notification and re-register upon relocation. Thus, while the Court in <u>Poritz</u> held the overall purpose of Megan's Law is remedial in nature, the method chosen to enforce its registration requirements is not. <u>See, e.g.</u>, <u>Gillette</u>, 553 F. Supp. 2d at 528 (recognizing that although the federal registration statute "may be considered a civil regulatory scheme, there [was] no justification for viewing" an amendment that imposed a harsher sentence for failing to register as "civil in nature []or nonpunitive"). The Committee statement reporting favorably on the proposed legislation that became <u>L.</u> 2007, <u>c.</u> 19 makes clear it was intended to increase the punitive consequences for those who violated Megan's Law's registration obligations. <u>Assemb. Judiciary Comm. Statement to S. 716 & 832</u> (Oct. 23, 2006). Because the Legislature enacted the amendments "to impose punishment[,]" the statutes "had a punitive intent." <u>Riley</u>, 219 N.J. at 285 (quoting <u>Smith</u>, 538 U.S. at 92). That alone compels ex post facto analysis. <u>Ibid.</u>

---

(continued)
penalties for violations, "resemble[] the punishment of parole/probation" and made the entire scheme punitive. <u>Snyder</u>, 834 F.3d at 703. The District Court of Colorado reached a similar result regarding that state's registration requirements. <u>Millard v. Rankin</u>, 265 F. Supp. 3d 1211, 1231 (D. Colo. 2017).

12

Along these lines, some federal courts have conducted ex post facto analyses when amendments to otherwise remedial federal sexual offender notification statutes imposed additional punitive consequences, for example, increasing sentencing exposure when the sex offender travelled interstate and failed to register. In <u>Gillette</u>, the district court concluded that it was a violation of the ex post facto clause to apply increased penalties for failing to register to the defendant, who traveled interstate and failed to register before the effective date of the amendment. 553 F. Supp. 2d at 533; <u>accord</u> <u>Stinson</u>, 507 F. Supp. 2d at 569.

Additionally, many federal and state courts have concluded that subsequent amendments to an otherwise constitutional remedial registration scheme, which make obligations more onerous than when the crime was committed or when registration was initially imposed, may result in ex post facto violations, even though the amendments did not increase the direct penal consequence for non-compliance. <u>See, e.g.</u>, <u>Snyder</u>, 834 F.3d at 698, 705-06 (concluding retroactive application of more restrictive registration requirements in amended Michigan law were punitive and violated ex post facto clause); <u>Commonwealth v. Muniz</u>, 164 A.3d 1189, 1193, 1218 (Pa. 2017) (more onerous lifetime registration enacted after the defendant committed the crime, but before he was sentenced, violated ex post facto clause); <u>Doe v.</u>

13 <span style="float:right">A-1243-16T2</span>

State, 111 A.3d 1077, 1100 (N.H. 2015) (aggregate effects of amendments to previously constitutional regulatory scheme, including lifetime registration without review, made the legislation punitive); Starkey v. Okla. Dep't of Corr., 305 P.3d 1004, 1030 (Okla. 2013) (finding retroactive application of lifetime registration was punitive and violated ex post facto clause); State v. Williams, 952 N.E.2d 1108, 1113 (Ohio 2011) (amendment that increased length of registration period violated state ex post facto prohibition when applied to a defendant who committed the crime before effective date of amendment); Commonwealth v. Baker, 295 S.W.3d 437, 446-47 (Ky. 2009) (residency restriction too punitive when applied retroactively); State v. Letalien, 985 A.2d 4, 26 (Me. 2009) (retroactive application of lifetime registration violated ex post facto clause).

We are persuaded that defendant's original 1999 sentence required him to comply ostensibly for the rest of his life with Megan's Law's registration requirements, which, in themselves, were not punitive but were enforced through decidedly punitive means. The amendments increased the punishment for defendant's non-compliance with that portion of his 1999 sentence. As such, the amendments "materially altered defendant['s] prior sentence[] to [his] disadvantage." Hester, 233 N.J. at 398. We therefore agree with Judge Flynn

14

that the State may not prosecute the crimes charged in counts three and four as third-degree crimes.

However, we see no reason why the judge dismissed the counts without prejudice, thereby forcing the State to return to the grand jury if it sought to re-indict defendant based on the same proofs it originally adduced. The only consequence of that effort would be essentially to amend the charges to properly designate them as fourth-degree offenses. Our Court Rules already permit such an amendment without re-presentation. Compare R. 3:7-4 (permitting amendment of the indictment "to correct an error in . . . the description of the crime . . . or to charge a lesser included offense provided that the amendment does not charge another or different offense . . . and the defendant will not be prejudiced . . . in his or her defense"), with State v. Dorn, 233 N.J. 81, 93-94 (2018) (explaining constitutional right to indictment and limits upon subsequent amendment). On the record before us, defendant never challenged the sufficiency of the evidence before the grand jury, nor could he claim any prejudice resulted from having to defend now against crimes that required proof of the same elements but carried lesser penalties. On the State's motion, the court may amend the indictment to reflect the proper grading of the charges.

Affirmed as modified.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1243-16T2